# Exhibit 1(a)

## Advisory Report #3 – Third Reviewer David Hoenig, MD, Neuro/Pain

**CLINICAL SUMMARY:**

On 11/21/2017, the claimant has an MRI of the head. There is a subacute hemorrhage of the pituitary gland.

On 02/19/2018, the claimant has an MRA of the head; it is negative.

On 02/19/2018, the claimant has an MRI of the pituitary. There has been significant improvement in the hemorrhagic products within the pituitary gland. No new hemorrhage.

On 10/15/2019, the claimant has a CT scan of the head; it is negative.

On 12/12/2019, the claimant sees Dr. McFarland. She is there for neurological follow-up. She had a concussion on 10/1/2019. She stood up and hit her head on a wall light with no loss of consciousness. She is working 2 days a week and is on part-time disability. She is pregnant. Neurological examination shows normal mentation. No papilledema. Cranial nerves are normal. There is mild increased tone. Light touch is symmetrical. Coordination is normal. There is increased tone in the trapezius. Ambulation is normal. Tandem gait is normal.

On 03/13/2020, the claimant sees Dr. McFarland. She has a history of migraines, orthostasis, and pituitary adenoma. She presents for follow-up. She continues to have episodic loss of vision that lasts for a few seconds and is described as the vision going black. These episodes are associated with clamminess, feeling hot, nauseous, and lightheadedness. On exam, there was normal mentation. No papilledema. Cranial nerves are normal. There is mild increased tone. Light touch is symmetrical. Coordination is normal. No drift. Ambulation is normal. Tandem gait is normal. On assessment since she is not having prolonged neurological deficit, the doctor does not think there is an immediate need for MRI since she is 24 weeks pregnant. We will image her in 2 weeks or sooner if symptoms progress or she gets new symptoms.

On 03/27/2020, the claimant has an MRI of the brain. There is an abnormal signal consistent with hemorrhage in the pituitary gland. This was present on the previous exam from 11/2017. The abnormality was not present on follow-up from 06/2018. The overall size of the gland is slightly increased compared to the prior exam. This is also similar to the 2017 exam which may be related to the patient being pregnant. It does not appear that there was significant compression of the optic chiasm.

On 06/16/2020, the claimant had an MRI of the pituitary gland. There is decrease in size and previously demonstrated abnormal signal since 03/2020. In retrospect, the lesion in 03/2020 and 11/2017 was most likely related to transient enlargement of the pituitary gland secondary to pregnancy rather than subacute hemorrhage.

On 10/07/2020, the claimant sees Dr. Kahan. She is there for right ear pain and left shoulder pain.

On 01/28/2021, Dr. Kahan answers questions. The claimant is precluded from light-level work on a full-time basis. There is fibromyalgia pain with intermittent vision loss. There is also migraine headache.

**ATTENDING PHYSICIAN CONTACTS:**

Dr. David Kahan:

On 03/04/2021 at 2:05 p.m. Pacific time, I spoke to the receptionist. The doctor is not available and I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

On 03/05/2021 at 7:46 a.m. Pacific time, I spoke to the receptionist. The doctor was not available, and I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

Dr. Jonathan Insel:

On 03/05/2021 at 7:41 a.m. Pacific time, I spoke to Claire. She spoke to me on behalf of the doctor. The doctor is an endocrinologist. He would defer neurological and pain management aspects of impairment to neurology and pain management.

Dr. Felesia McFarland:

On 03/04/2021 at 2:15 p.m. Pacific time, I spoke to Erica. She states that the doctor is on a leave of absence, and it is not known when the doctor will return.

AP QUESTIONS:

When was the claimant last seen?
How often is the claimant seen?
What are the findings on exam?
Are there any significantly abnormal diagnostic studies?
Are there any restrictions and limitations?
If so, what are they, and why?
Are there any mental health comorbidities?

**Diagnosis:** FMS, Migraines, Pituitary Adenoma

**RESPONSE TO QUESTIONS:**

1. **Please provide your assessment of restrictions and limitations beyond 02.17.2021 to present. Please consider self-reported symptoms including pain, dizziness, vision issues and headaches, any cognitive issues or loss of consciousness/mental confusion, any medication side effects, and the cumulative effect of these.**

   Based on the documentation provided and from a neurological and pain medicine perspective only, the claimant does not have any restrictions and limitations beyond 02/17/2021 to the present.

2. **Based on the medical evidence and symptomology provided, will the conditions cause episodic flare-ups periodically impacting ability to perform work activities? Yes_____ No_____ ** If yes, describe specific activities that are impacted, how these activities are impacted and severity of impact.**

   Based on the documentation provided and from a neurological perspective only, there is documentation that the claimant has migraine headaches. However, no documentation that this is causing episodic flare-ups impacting the ability to perform work activities as of 02/17/2021 to the present. The last clinical note from Neurology is from 03/2020. Therefore, it is not clear without updated neurological records whether there are any episodic flare-ups resulting in an impact in the ability to perform work activities for the dates in question.

22

3.  **If periodic flare-ups will impact function, is it medically necessary for Ms. ▓▓▓▓ to be absent from working during the flare-ups? Yes_____ No_____ Please explain in detail:**
    **\*\*If yes to the above question, based on upon the medical history and your knowledge of the medical condition, estimate the   Frequency of flare-ups and the duration of related absence. (For Example: 1 episode every month lasting 24 hours).**
    **Frequency:____ times per _____week or _____month**
    **Duration: _____ hours per episode**

    Not applicable as periodic flare-ups are not supported.

4.  **Please advise if Ms. ▓▓▓▓ abilities are sustainable 10 hours per day/3 days per week, or for what specific period and interval. If limited endurance is a factor, please explain what findings support this.**

    The claimant has the ability for sustain 10 hours per day/3 days per week.

5.  **Please explain the medical rationale for your opinion. Please comment on the attending physician's opinion of Ms. ▓▓▓▓ functionality and discuss any differences with your opinion.**

    Based on the documentation provided and from a neurological and pain medicine perspective only, the claimant does not have any restrictions and limitations beyond 02/17/2021 to the present. It is acknowledged that the claimant has headaches. However, there is no documentation of a updated detailed history & physical examination from Neurology for the dates in question submitted for review. The last clinical note from Neurology is from 03/2020. MRI of the brain shows a pituitary adenoma which is possibly secondary to pregnancy. There is no documentation of any updated neurological diagnostic studies for review. It would be reasonable that if the claimant has a headache that requires acute care than she would not be able to work that particular day, otherwise there are no specific restrictions and limitations pertaining to migraine headaches. It is acknowledged that the claimant has a diagnosis of fibromyalgia. The last clinical note submitted for review is from 10/2020. There is no documentation of a detailed history & physical examination by Pain Management submitted for review. There was no documentation of any significantly abnormal musculoskeletal pathology pertaining to fibromyalgia submitted for review. As such, there are no clear restrictions and limitations related to fibromyalgia. Aspects pertaining to pituitary adenoma would be deferred to Endocrinology. There is no documentation of any specific impairment in functionality by Neurology submitted for review for the dates in question. I disagree with the primary care provider that the claimant is precluded from light-level work on a full-time basis, for the reasons stated above.

_____
David B. Hoenig, M.D.
Diplomate, American Board of Psychiatry and Neurology, Pain Medicine
Diplomate, American Board of Psychiatry and Neurology, Brain Injury Medicine
California License #82847
DBH/ab

# Exhibit 1(b)



MLS National Medical Evaluation Services

Phone: 888.877.4634  |  Fax: 248.356.8757  |  www.mls-ime.com



November 6, 2018

Re: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
    Claim Number: ▮▮▮▮▮▮▮▮▮▮

<u>ADDENDUM</u>

To Whom It May Concern:

<u>LIST OF MEDICAL DOCUMENTATION</u>

All medical records have been reviewed.

| Referral | | 11/02/18 |
|---|---|---|
| Progress notes | The Neurology Center of Southern California | 02/22/18-07/03/18 |
| UR Report | D. Hoenig MD | 10/19/18 |
| Misc. | | 05/07/15-10/31/18 |

<u>SUMMARY OF ADDITIONAL MEDICAL DOCUMENTATION</u>

On 07/03/2018, the claimant sees Dr. Schim. She is there for headache follow-up. The headaches are the same. They are about six days a week. She is using abortives. She is taking multiple medications.  Examination is not done.  Medications are prescribed.

On 05/16/2018, the claimant sees Dr. Schim. She is there for headaches. Headaches are the same, about six days per week. She is using multiple medications.  Neurological examination is not done.  The plan is for Botox and medication.

On 03/14/2018, the claimant sees Dr. Schim. She is there for headache follow-up. Headaches are about the same, about six days a week. She is taking multiple medications.  Neurological examination is not done.  Medications are prescribed.

On 02/22/2018, the claimant sees Dr. Schim.  She is there for headache follow-up.  She has had migraines since she was 12 years old. She has been getting Botox for eight years. With Botox, her headaches dropped to five per month. She is taking medications. Neurological examination was not done. She has had trans magnetic stimulation. Headaches are better.  The plan is for medications.

Claim Number ▓▓▓▓▓▓▓▓
David B. Hoenig, M.D.
11/06/2018
Addendum - Page 2

CONCLUSION

**1. Do the medical records and prescription history corroborate the reported frequency and severity of headaches from 12/2017 to the present?**

Based on the documentation provided, and from a neurological perspective only, the records and prescription history do corroborate that the claimant does have ongoing consistent headaches for which she is getting care from 12/17 to the present.

**2. Please provide a description of the claimant's functional impairments, if any, and outline how they would translate into limitations and restrictions. Is it medically reasonable to relate the restrictions and limitations from 12/2017 to the present?**

Based on the documentation provided, and from a neurological perspective only, the claimant does not have any clear physical functional impairment that would translate into restrictions and limitations. There is no documentation of any neurological deficits on exam. It is acknowledged that the claimant has chronic headaches. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no clear physical restrictions or limitations.

*I certify that I have no Conflict of Interest with this review. I attest to having no past or present relationship or affiliation with the beneficiary of this Independent Review or a significant past or present relationship with the attending provider and/or the treatment facility under review (if applicable). I further certify that I have no familial or material, professional or business relationship with the referring entity or incentive to promote the use of a certain product, service or outcome associated with the review of this case.*

*I further certify that I have no direct or indirect financial incentive for a particular determination or ownership interest of greater than 5% between any affected parties. I also attest to having the appropriate license/board certification for practitioners who typically manage the medical condition/procedure/treatment or issue that is the subject of this review as well as the knowledge and clinical experience to review this case including at least 5 years full-time equivalent experience providing direct clinical care to patients.*

██████████

Claim Number ██████████████
David B. Hoenig, M.D.
11/06/2018
Addendum - Page 3


Sincerely,


David Hoenig, M.D.
Board Certified: American Board of Psychiatry and Neurology, Neurology
Board Certified: American Board of Psychiatry and Neurology, Pain Medicine
American Academy of Neurology
American Society of Interventional Pain Physicians
California Society of Interventional Pain Physicians
International Association for the study of Pain
International Spine Intervention Society
North American Neuromodulation Society
World Institute of Pain


*MLS attests to the fact that there is no conflict of interest with this review MLS attests that its compensation is not dependent on the specific outcome of this review. All opinions in this report are solely the opinions of the author. All opinions are advisory only, independently developed by the author and are based upon a reasonable degree of medical certainty and evidence-based medical concepts, considering the data available at the time of this report.*

# Exhibit 1(c)



**MLS National Medical Evaluation Services**

Phone: 888.657.4654  |  Fax: 248.356.6757  |  www.mls-inst.com



*MLS Group of Companies, LLC*

**Claimant Name:** ███████████

**Claim Number:** ███████████

**Reviewer:**    David B Hoenig

**Completion date:**  6/24/2020

### Summary of Peer Outreach:

TELECONFERENCE #1:
      1) AP NAME: Jack Schim
      2) DATE: 6/19/2020
      3) TIME: 5:39 AM PT
      4) PERSON SPOKEN WITH: Receptionist
      5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The doctor was not available. I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #2:
      1) AP NAME: Jack Schim
      2) DATE: 6/22/2020
      3) TIME: 11:42 AM PT
      4) PERSON SPOKEN WITH: Kevin
      5) POSITION OF PERSON SPOKEN WITH: Medical assistant

SUMMARY OF CONVERSATION: The doctor was not available. He took a message for the doctor to call me back regarding the patient.

### Attending Physician Statement:
On 04/29/2020, Dr. Schim completes an Attending Physician Statement. The primary diagnosis is migraine. The claimant can occasionally walk, stand, twist, kneel, reach above the shoulders, lift five pounds and carry 10 pounds. The claimant can negligibly sit, bend, squat, climb, push, pull and balance. The claimant is able to drive. The claimant can do sedentary capacity.

### Medical Summary:
Clinical documentation from 2014 and 2015 is reviewed.

On 06/01/2015, the claimant has an MRI of the brain. There is a right mastoid effusion. Otherwise, normal MRI of the brain.

There is clinical documentation from 2016 reviewed.

Page - 2  Claimant  Name: ███████████    Claim  Number: ███████████

On 03/09/2016, the claimant has an MRA of the head and neck. There is no significant stenosis. There is a normal MRA of the brain.

There is clinical documentation from 2017, 2018, and 2019 reviewed.

On 04/29/2020, the claimant sees Dr. Schim. The claimant has a telemedicine visit. She has migraines. She was last seen in December 2019. She is doing well with the combination of Aimovig and Topamax. With that, she dropped down to about one migraine every month or so and has had a reduction by at least half of her lower-level daily headaches. She denies any side effects. Medications are renewed. She is to be seen in follow-up in about six months.

**Records reviewed:**

| Referral | | 06/18/20 |
|---|---|---|
| Claim log | Case Notes | 10/12/15-06/18/20 |
| Progress notes | The Neurology Center | 04/14/14-04/29/20 |
| Progress notes | El Norte Medical Group | 08/10/15-02/01/16 |
| Progress notes | Graybill Medical Group | 11/19/14-12/15/15 |
| Progress notes | Arch Health Partners | 07/28/14-01/23/17 |
| Progress notes | QTC Medical Group | 12/15/15 |
| Progress notes | Sharp | 09/05/17-12/12/17 |
| UR Report | D. Newton RN | 12/22/17 |
| UR Report | C. Slavin RN | 06/10/20 |
| UR Report | S. White MD | 01/04/18 |
| UR Report | D. Hoenig MD | 10/19/18-11/06/18 |
| UR Report | T. Hamill RN | 05/21/20 |
| UR Report | F. Khoury MD | 10/20/18 |
| UR Report | C. McCrum RN | 10/26/15-10/30/17 |
| X-Ray | Sharp | 10/13/17 |
| X-Ray | Graybill Medical Group | 11/24/15 |
| MRI | McKesson | 06/01/15 |
| MRI | Valley Radiology | 10/06/14-03/09/16 |
| Lab | Arch Health Partners | 08/25/14 |
| Lab | Quest | 08/06/15 |
| Lab | Graybill Medical Group | 11/24/15-12/08/15 |
| Other Test | Graybill Medical Group | 07/20/15 |
| Other Test | Sharp | 09/18/17 |
| Other Test | Valley Radiology | 07/22/14 |
| Job | Smartcare MD Practice Management | Undated |
| Misc | | 10/11/10-06/11/20 & Undated |
| ROI | | 05/14/15-12/06/19 & Undated |

Page - 2   Claimant Name: ███████████████   Claim Number: ████████████████

**Conclusion:**
___ **Restrictions & Limitations Supported**
_X_ **Restrictions & Limitations Not Supported**

**Analysis/Rationale:**
I have reviewed all of the information provided to me by the Claims Manager (found in the file referenced above) but have not personally interviewed or examined the claimant.
Not applicable

**Questions:**

**1. Does the medical evidence continue to provide support for physical functional impairment related to headaches/migraines from current and ongoing? Please provide rationale for your conclusion and correlate with available evidence including diagnostics, physical examination findings, and/or reported symptoms in the medical records.**

Based on the documentation provided, and from a neurological perspective only, there is a lack of clinical documentation supporting physical functional impairment related to headaches/migraines as of the current and ongoing. It is acknowledged that the claimant has a long history of migraine headaches. The claimant is under periodic care by Neurology. The last clinical note from Neurology is from 04/2020. The note before that was from 12/2019. There is documentation from Neurology that the claimant is to follow-up in six months after the 04/2020 visit. There is documentation that the claimant has one migraine every month and there is a reduction by at least half of the lower level daily headaches. There is no documentation of any neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific restrictions or limitations.

**2. If there is evidence of current physical functional impairment related to headaches/migraines, is the claimant capable of return to work at a sedentary physical demand level on a full time basis? If it is your opinion that the claimant is not limited, please clearly indicate this in your report and explain. Also, if restrictions are supported for a limited or a closed period of time, please note that period of time. Please see occupational demands below:**
**Sedentary work involves exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including the human body. Sedentary work involves sitting most of the time. But may involve walking or standing for brief periods of time. Jobs may be defined as Sedentary when walking and standing are required only occasionally and all other Sedentary criteria are met.**

Based on the documentation provided, and from a neurological perspective only, there is a lack of clinical documentation supporting physical functional impairment related to headaches/migraines as of the current and ongoing. It is acknowledged that the claimant has a long history of migraine headaches. The claimant is under periodic care by Neurology. The last clinical note from Neurology is from 04/2020. The note before that was from 12/2019. There is documentation from Neurology that the claimant is to follow-up in six months after the 04/2020 visit. There is documentation that the claimant has one

Page - 2  Claimant Name: ███████████        Claim Number: ███████████

migraine every month and there is a reduction by at least half of the lower level daily headaches. There is no documentation of any neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific restrictions or limitations. There is a lack of clinical documentation that the claimant would not be capable of returning to work at a sedentary physical demand level on a full-time basis.

**3. If the claimant is not capable of performing the noted occupational activities please specify what activities noted above are specifically precluded and correlate with the available evidence including diagnostics, physical examination findings, and/or reported symptoms in the medical records.**

Not applicable as there is no specific occupational activity that would be precluded.

**4. Please discuss your assessment of the prognosis for recovery and return to the work activities described above.**

The prognosis is not known due to the nature of her condition.

**5. Please summarize what has been the claimant's course of treatment. Is it appropriate and has the claimant been compliant? What can be expected for continued treatment?**

Presently, the claimant has been utilizing medication as the course of treatment. There is no documentation of non-compliance. It would be expected that the claimant would be able to continue treatment.

**6. Do you agree with the restrictions and limitations noted in the APS from Dr. Jack Schim completed on 04/29/2020? Please explain why or why not. Are the restrictions and limitations consistent with Dr. Schim observations in the telehealth visit of the same date? Please explain why or why not.**

The opinion by Dr. Schim is acknowledged. I disagree with the opinion. It is not clear why the claimant would have only occasional activity and negligible activity restrictions/limitations. There are no neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. There is documentation that the claimant is down to one migraine a month and a reduction by at least half of lower level daily headaches.

**7. Does the accompanying surveillance information conflict with or contradict documentation in the available medical records and headache log (signed 4/16/20)? Please explain.**

There is video surveillance from 03/06, 03/07, 03/24, 03/25 and 06/03/2020. The headache log shows that the claimant has, on 03/06, a 3 out of 10 headache. On 03/07, there is documentation that the claimant has a 2 out of 10 headache. On 03/24, there is documentation the claimant had a 10 out of 10 headache. On 03/25, there is documentation that the claimant had a 6 out of 10 headache. While there is documentation that the claimant had anywhere from a mild headache to a severe headache based on her pain scores, there is documentation on each of those days that the claimant is undergoing physical activity.

Page - 2  Claimant Name: ████████████    Claim Number: ████████████

**8. After your initial review of available medical records, please contact the claimant's treating provider Dr. Jack Schim to discuss your opinion regarding medically supported R&Ls. Please outline the information reviewed during your call. If the information discussed with Dr. Schim changed your initial findings regarding supported restrictions and limitations please provide a rationale for how this discussion altered your opinion. Please indicate if you have reached a consensus with the treating provider. If not, please document your final assessment after the call.**

**Surveillance Links**

3/6-3/8                                      Agent                                          1:
https://photofax.viewcases.com/file/watch/112298/5645989b0b0885349f481d9
2a1f3b473
3/6-3/8                                      Agent                                          2:
https://photofax.viewcases.com/file/watch/112299/16313e6305ce7799ef1b12a
8d7d8b8c8
3/24-3/26:
https://photofax.viewcases.com/file/watch/113105/2bf1adb416c08389a02c99b
dca263137

On March 6, 2020, the claimant is under video surveillance. She is seen sitting. She is seen standing. She is seen walking. She is seen opening a door. She is seen holding a handbag.

On March 7, 2020, the claimant is under video surveillance. The claimant is seen walking. She is seen inside the store. She is seen holding a handbag. She is seen standing and reaching. She is seen bending over and lifting a box. She is seen bending over to put back a box. She is seen driving. She is seen sitting, eating, and drinking.

On March 24, 2020, the claimant is under video surveillance. She is seen walking. She is seen carrying items. She is seen putting items in garbage bins. She is seen pulling garbage bins up a curb and pushing and pulling two garbage bins at the same time up a driveway. She is seen bending over.

On March 25, 2020, the claimant is under video surveillance. She is seen standing. She is seen holding items in both hands. She is seen conversing. She is seen walking. She is seen holding an infant. She is seen walking while holding an infant.

On June 3, 2020, the claimant is under video surveillance. The claimant is seen standing up and walking.

**REFERENCE (S):**

Not applicable

CONFLICT OF INTEREST:

*I certify that I have no relationship or affiliation with the beneficiary of this independent review or a significant past or present relationship with the Attending Provider and/or the treatment facility. I further certify that I have no familial or material professional or business relationship or incentive to promote the use of a certain product or service*



Page - 2  Claimant  Name: ███████████    Claim  Number: ███████████

*associated with the review of this case.  I further certify that I have no direct or indirect financial incentive for a particular determination or ownership interest of greater than 5% between any affected parties.*

*This attestation certifies that the peer reviewer named below has the appropriate scope of licensure  or  certification  that  typically  manages  the  medical  condition,  procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.*

Sincerely,

David Hoenig, M.D.
Board Certified: American Board of Psychiatry and Neurology, Neurology
Board Certified: American Board of Psychiatry and Neurology, Pain Medicine
Board Certified: American Board of Psychiatry and Neurology, Brain Injury Medicine
American Society of Interventional Pain Physicians
California Society of Interventional Pain Physicians
International Association for the study of Pain
International Spine Intervention Society
North American Neuromodulation Society
World Institute of Pain
American Academy of Neurology

*MLS attests to the fact that there is no conflict of interest with this review MLS attests that its compensation is not dependent on the specific outcome of this review.  All opinions in this report are solely the opinions of the author. All opinions are advisory only, independently developed by the author and are based upon a reasonable degree of medical certainty and evidence-based medical concepts, considering the data available at the time of this report.*

# Exhibit 1(d)



MLS Group of Companies, LLC

**MLS Case Number:** 100090

### Physician Review
#### CLAIM DATA

**ID Number:** 374778

**DOB:** 9/6/1975
**Claim Number:** 17903776
**First Date of Absence:** 01/05/2018

**Claim Type:** LTD

**Disability Test:** N/A

**Employer:** Teva Pharmaceuticals USA, Inc.
**Insurance Carrier:** Insured, AETNA
**Occupation/Job Title:** SR DIR EHS REGIONAL HEAD II

**Physical Demand Rating:** Sedentary
**Specific Vocational Preparation (SVP) Rating:** N/A
**Prior Reviewer(s):**
**Diagnosis(es):** M48.02 - SPINAL STENOSIS, CERVICAL REGION
**Date(s) Under Review:** 6/24/2020 onward

#### REFERRAL INFORMATION

**Last Name:** GRINIS
**E-mail contact:** Kim.Grinis@thehartford.com
**Requester's Phone Number:** na
**Claim Office:** None Listed
**Submission Date:** 2/5/2021
**Appeal:** YES
**Addendum:** NO
**Telephonic Consultation with Provider Requested:** Yes
**Specialty Requested:** Neurology/Pain Medicine

**First Name:** KIM

**Extension:**

**Perfection Date:**

#### PROVIDER CONTACT INFORMATION

**Treating Provider's Name (1):** Mark Diamond MD
**Treating Provider's Specialty (1):** Neurology
**Phone Number:** 973-285-1446
**Question(s):**
**Special Handling Instructions:**

**Time Zone:** Eastern Time

**Treating Provider's Name (2):** Vincent McInerney MD
**Treating Provider's Specialty(2):** Orthopedic Surgery
**Phone Number:** 973- 694-2690 (option 2)

**Time Zone:** Eastern Time

© 2021 by The Hartford  Classification Company Confidential  No part of this document may be reproduced, published or used without the permission of The Hartford

Question(s):
Special Handling Instructions:

Treating Provider's Name (3): Terrence Welsh MD
Treating Provider's Specialty (3): Pain Management
Phone Number: 973-285-7800 (option 9)      | Time Zone: Eastern Time
Question(s):
Special Handling Instructions:

### *REVIEWING PHYSICIAN DATA*

Reviewer Assigned: MLS
Specialty Assigned: Neurology/Pain Medicine      Assignment Date: 2/5/2021

### RECORDS SUBMITTED FOR REVIEW:
All medical received was reviewed for this claim

### CLAIM SYNOPSIS:
Claimant is a 45 year old male, out of work since 1/5/2018; date of disability 1/4/2018. Clmt sustained injuries as a result of motor vehicle accident. Clmt remained off work due to continued chronic back and neck pain and chronic daily headaches/migraines. Clmt also noted to have leg pain. Severe lumbar and cervical stenosis/spondylosis.

LTD benefit start date: 7/5/2018. LTD benefit was approved through 6/23/20, but terminated as of 6/24/20, because it was determined that the clmt was no longer disabled from his own occupation as well as any reasonable occupation.

On appeal, FCE and Voc assessment submitted as well as questionnaires completed by clmt's providers and attorney's narrative.

It is noted that clmt has daily chronic headaches, 3 per day; Unable to work on computer screen due to headache pattern. Also noted to have chronic neck and back pain and unable to sit, stand long periods because it creates severe back and leg pain.

Clmt reports physical limitations due to daily chronic pain, headaches and fatigue. Clmt also reports cognitive issues due to pain and headache symptoms; and that he also struggles with dizziness and nausea. Clmt feels this would prevent him from working any job due to difficulty communicating/interacting with others, and also due to trouble sustaining attention and recalling things. Attorney states cognitive impairment should be considered as clmt unable to focus, concentrate, and use computer. Per Attny, clmt underwent FCE in order to provide additional evidence and it is noted that Dr. Welsh, Dr. Diamond and Dr. McInerney reviewed FCE and agree with conclusions that clmt is unable to sustain even a sedentary occupation.

2.

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford Classification Company
Confidential. No part of this document may be
reproduced, published or used without the permission
of The Hartford

**CLINICAL FILE REVIEW:**
**I have reviewed all of the records listed above. I will directly comment upon information most relevant to the question(s) posed and the time period(s) in question.**

There is clinical documentation prior to 06/24/2020.

There is clinical documentation from 2018.

On 01/04/2018, the claimant has a CT scan of the head. It is negative for acute pathology.

On 06/04/2018, the claimant has a CT of the cervical spine. It is negative for acute pathology. There are degenerative changes with a congenitally narrowed cervical canal.

On 01/04/2018, the claimant has an x-ray of the left shoulder. There is no acute pathology.

There is clinical documentation from 2019.

On 06/01/2020, the claimant sees Dr. Williamson. He is there for a mental status evaluation. The diagnosis is major depression, generalized anxiety disorder, panic disorder. It does appear he is competent to handle his own funds at the present time should it be determined applicable. His overall prognosis remains guarded due to the chronicity and severity of his symptom presentation.

On 10/06/2020, the claimant has a Functional Capacity Evaluation. The claimant did not demonstrate an ability to meet the criteria to tolerate an eight-hour workday due to decreased tolerance levels for sitting, standing, and walking. His physical demand level is unable to be classified at this time since he does not meet the full sedentary physical demand level.

On 12/30/2020, Dr. McInerney answers questions.

On 12/16/2020, the claimant sees an unknown provider. The note is difficult to read.

On 12/17/2020, Dr. Diamond answers questions. The written answer is difficult to read.

On 09/23/2020, the claimant sees Dr. Welsh. He is there for ongoing neck pain and low back pain. Medication is helpful. There was dizziness, mental cloudiness, and nausea. He has these since the day of the accident and does not feel necessarily that it is

3

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford Classification Company
Confidential. No part of this document may be
reproduced, published or used without the permission
of The Hartford

related to his medications.  Botox is planned for headaches.  On exam, there is intact strength in the arms.  There is a reduced range of motion.  The plan is for medication.

On 11/07/2020, the claimant sees an unknown provider.  He is there for neck pain.  He still has dizziness, drowsiness with blurred vision, and headaches due to a myriad of medications.  There is a minimal improvement with Botox.  Headache patterns are the most difficult for him to deal with during the day.  It is hard for him to be on the computer and do the work he did in the past.  On exam, there is cervical spasm and reduced range of motion.  He is neurologically intact.  On assessment, his major problem at this time is unremitting headaches.  He is struggling to do any type of light-duty work and limited duty work due to unremitting headache patterns.  This comes on once he has to start using his computer.

There are headache logs.

There was clinical documentation from 2020 prior to 06/24/2020.

On 01/29/2018, the claimant has an MRI of the lumbar spine.  There are degenerative changes.

On December 16, 2020, the claimant sees Dr. Diamond. Botox continues to help. There is a 50% benefit. The patient is seeing pain management for neck and back pain. The claimant is taking Nortriptyline, Meloxicam, Lyrica, Lipitor, Fenofibrate, chlorthalidone, Lisinopril.  Neurological examination shows normal mentation and speech. Cranial nerves are normal. Motor examination is normal. Reflexes are normal. Ambulation is normal. Coordination is normal. Plan is for medication and Botox.

## PEER-TO-PEER CONSULTATION
TELECONFERENCE #1:
    1) AP NAME: Mark Diamond MD
    2) DATE: 2/9/2021
    3) TIME: 10:49 AM
    4) PERSON SPOKEN WITH: Tara
    5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The doctor was not available. She took a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #2:
    1) AP NAME: Mark Diamond MD
    2) DATE: 2/11/2021
    3) TIME: 10:56 AM
    4) PERSON SPOKEN WITH: Tara

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford  Classification  Company
Confidential  No part of this document may be
reproduced, published or used without the permission
of The Hartford

5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The doctor was not available. She took a message for the doctor to call me back regarding the claimant. I was returning the doctor's call.

TELECONFERENCE #3:
    1) AP NAME: Vincent McInerney MD
    2) DATE: 2/9/2021
    3) TIME: 10:56 AM
    4) PERSON SPOKEN WITH: Maria
    5) POSITION OF PERSON SPOKEN WITH: Medical assistant

SUMMARY OF CONVERSATION: The doctor was unavailable. She took a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #4:
    1) AP NAME: Vincent McInerney MD
    2) DATE: 2/11/2021
    3) TIME: 10:59 AM
    4) PERSON SPOKEN WITH: Receptionist
    5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The  Dr. was unavailable. I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #5:
    1) AP NAME: Terrence Welsh MD
    2) DATE: 2/9/2021
    3) TIME: 10:59 AM
    4) PERSON SPOKEN WITH: Receptionist
    5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The  Dr. was not available. I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #6:
    1) AP NAME: Terrence Welsh MD
    2) DATE: 2/11/2021
    3) TIME: 11:01 AM
    4) PERSON SPOKEN WITH: Receptionist
    5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The  Dr. was not available. I was transferred to

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford Classification Company
Confidential. No part of this document may be
reproduced, published or used without the permission
of The Hartford

voicemail. I left a message for the doctor to call me back regarding the claimant.

## REFERRAL QUESTIONS & CONCLUSIONS:

**1. Does the FCE appear to be a valid and reliable representation of the claimant's abilities according to your review of the available information?  Please explain.**

Based on the documentation provided, and from a neurological Pain Medicine perspective only, the Functional Capacity Evaluation is labeled to be a valid and reliable representation.  However, it is not clear from the documentation why the claimant would not be able to meet the full sedentary physical demand level while there is no documentation of any neurological deficits on the exam and the only musculoskeletal findings on the exam are reduced cervical range of motion and cervical spasm.

**2. Are the FCE findings consistent with the findings on evaluation in the medical records?    Please explain and provide your detailed assessment/clinical correlation.**

Based on the documentation provided, and from a neurological and Pain Medicine perspective only, the Functional Capacity Evaluation findings are not consistent with the findings on evaluation of the medical record.  The Functional Capacity Evaluation is labeled to be a valid and reliable representation, however, it is not clear from the documentation why the claimant would not be able to meet the full sedentary physical demand level while there is no documentation of any neurological deficits on the exam and the only musculoskeletal findings on exam are reduced cervical range of motion and cervical spasm.

**3. Are the claimant's reported complaints and level/frequency of pain, daily chronic headaches, and symptoms consistently documented in the record? Are the subjective reports (of pain and other reported symptoms) impact on functional capacity credible and consistent? Please explain.**

Based on the documentation provided, and from a neurological and Pain Medicine perspective only, it is not clear if the complaints and level/frequency of pain of chronic daily headaches and symptoms are consistently supported in the record as of 06/24/2020 and forward.  There is only one clinical note from Orthopedics.  There is only one clinical note from Pain Management and one clinical note from Neurology submitted for review.  As such, it is not known if the subjective reports impact on functional capacity are credible and consistent.

**4. Do the claimant's complaints, reported pain levels, and headache symptoms/pattern rise to a level of physical and/or cognitive impairment? If so,**

6

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford Classification Company
Confidential. No part of this document may be
reproduced, published or used without the permission
of The Hartford

**how would it impact his ability to function and/or sustain function including use of computer throughout an eight-hour day? What specific restrictions and/or limitations, if any, or if not in agreement with FCE findings, are appropriate based on your review of the medical records and telephone consultations (if applicable) from 6/24/2020, onward? Please explain either way in your detailed assessment.**

Based on the documentation provided, and from a neurological and Pain Medicine perspective only, the claimant has reports of pain and headache symptoms that result in physical impairment. It is acknowledged that the claimant has chronic pain. The claimant is under the care of Orthopedics, Pain Management, as well as Neurology. There are no neurological deficits on exam. There is documentation of cervical reduced range of motion and spasm. CT of the cervical spine shows congenital changes and no acute pathology. CT of the head shows no acute pathology. There is no documentation of any significantly abnormal neurological or musculoskeletal diagnostic studies.

Regarding headaches, it would be reasonable that if the claimant has a headache that requires acute care that he would not be able to work that particular day, but there were no specific physical restrictions or limitations related to headaches.

Regarding the cervical spine pathology, the claimant can occasionally lift and carry 20 pounds and frequently 10 pounds. He can occasionally reach overhead. There are no other clear physical restrictions or limitations.

While it is acknowledged that the claimant has complaints of headaches using a computer, it would be reasonable for the claimant to take occasional breaks. However, it is not clear from the documentation why only computers would not be able to be utilized.

**5. Would he have sustained capacity for a 40-hour week (8 hr/day, 5 days/week) 6/24/20, onward? If no, please explain what the expected capacity would be and why.**

The claimant has full-time work capacity within the above-stated restrictions and limitations. There are no other restrictions and limitations applicable from a neurologic and pain management perspective.

**6. Is there evidence of physical and cognitive impairment due to side effects from any of his prescribed medications? If so, please explain what findings in the record support this and how it would impact his day-to-day function during the period in question.**

7

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford Classification Company
Confidential. No part of this document may be
reproduced, published or used without the permission
of The Hartford

There are no physical impairments related to medication usage, but there is conflicting documentation as to whether the claimant has impairment related to medication side effects from the 09/20 note from Dr. Welsh. There is documentation of symptoms, but the claimant did not feel that these necessarily relate to his medications, however, in 11/2020, Dr. McInerney documents medication side effects, but then in 12/2020, there is no documentation of medication side effects from Neurology. As such, there are no clear functional impairments related to medication side effects.

As of the last clinical notes from 12/16/2020, the claimant is taking Nortriptyline, Meloxicam, Lyrica, Lipitor, Fenofibrate, chlorthalidone, Lisinopril.

**Conflict of Interest Attestation:**
The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty. I certify that I have no relationship or affiliation with the claimant whose claim is the subject of this independent review, nor a significant relationship with the treating provider(s) and/or the treatment facility. I further certify that I have no familial or material professional or business relationship, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review, nor do I have any incentive, financial or otherwise, that would lead me to offer an opinion other than based on my honest professional assessment of the information provided for review.

David Hoenig, M.D.
Board Certified: American Board of Psychiatry and Neurology, Neurology
Board Certified: American Board of Psychiatry and Neurology, Pain Medicine
Board Certified: American Board of Psychiatry and Neurology, Brain Injury Medicine
American Society of Interventional Pain Physicians
California Society of Interventional Pain Physicians
International Association for the study of Pain
International Spine Intervention Society
North American Neuromodulation Society
World Institute of Pain
American Academy of Neurology
2/19/2021

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford Classification Company
Confidential. No part of this document may be
reproduced, published or used without the permission
of The Hartford

**Confidential**
This report is confidential and should be read only by designated Aetna Disability and
Leave Management Services staff or specific designees in accordance with the Aetna
code of Conduct and applicable law.

**Consult Level: Level 1**

9

MLS Case #: 100090
Date: 2/19/2021
© 2021 by The Hartford  Classification Company
Confidential  No part of this document may be
reproduced, published or used without the permission
of The Hartford

# Exhibit 1(e)



MLS Group of Companies, LLC

**MLS Case Number:** 103637

*Physician Review*
CLAIM DATA

**ID Number:** 376354

**DOB:** 9/6/1975
**Claim Number:** 17903776
**First Date of Absence:** 01/05/2018

**Claim Type:** LTD

**Disability Test:** N/A

**Employer:** Teva Pharmaceuticals USA, Inc.
**Insurance Carrier:** Insured, AETNA
**Occupation/Job Title:** SR DIR EHS REGIONAL HEAD II

**Physical Demand Rating:** Sedentary
**Specific Vocational Preparation (SVP) Rating:** N/A
**Prior Reviewer(s):** MLS National
**Diagnosis(es):** M48.02 - SPINAL STENOSIS, CERVICAL REGION
**Date(s) Under Review:** 6/24/2020 onward

REFERRAL INFORMATION

**Last Name:** GRINIS                    **First Name:** KIM
**E-mail contact:** Kim.Grinis@thehartford.com
**Requester's Phone Number:** na         **Extension:**
**Claim Office:** None Listed
**Submission Date:** 2/5/2021             **Perfection Date:**
**Appeal:** NO
**Addendum:** YES
**Telephonic Consultation with Provider Requested:** No
**Specialty Requested:** Neurology/Pain Medicine

REVIEWING PHYSICIAN DATA
**Reviewer Assigned:** MLS
**Specialty Assigned:** Neurology/Pain Medicine        **Assignment Date:** 2/5/2021

**RECORDS SUBMITTED FOR REVIEW:**
-Attorney's 3/15/21 narrative response addressing peer reviewer's report.
-Responses/Statements from Dr. Welsh, Dr. Diamond and Dr. McInerney
-Disability statement from claimant

-Additional medical records from Dr. Welsh and Dr. McInerney
-Social Security Notice of Decision
-MRI report of the cervical spine dated 3/8/21
-Neurology/Pain Medicine peer report dated 2/19/21

**CLAIM SYNOPSIS:**
*Addendum Review needed with Neurology/Pain Medicine, Dr. Hoenig*

Additional information received:

-Attorney's 3/15/21 narrative response addressing peer reviewer's report.
-Responses/Statements from Dr. Welsh, Dr. Diamond, and Dr. McInerney
-Disability statement from the claimant
-Additional medical records from Dr. Welsh and Dr. McInerney
-Social Security Notice of Decision
-MRI report of the cervical spine dated 3/8/21
-Neurology/Pain Medicine peer report dated 2/19/21

**CLINICAL FILE REVIEW:**
**I have reviewed all of the records listed above. I will directly comment upon information most relevant to the question(s) posed and the time period(s) in question.**

There is clinical documentation prior to 06/24/2020.

There is clinical documentation from 2018.

On 01/04/2018, the claimant has a CT scan of the head. It is negative for acute pathology.

On 01/04/2018, the claimant has an x-ray of the left shoulder. There is no acute pathology.

On 01/29/2018, the claimant has an MRI of the lumbar spine. There are degenerative changes.

On 06/04/2018, the claimant has a CT of the cervical spine. It is negative for acute pathology. There are degenerative changes with a congenitally narrowed cervical canal.

There is clinical documentation from 2019.

Headache logs are reviewed.

MLS Case #: 103637
Date: 4/1/2021



There is attorney correspondence.

On 06/01/2020, the claimant sees Dr. Williamson. He is there for a mental status evaluation. The diagnosis is major depression, generalized anxiety disorder, panic disorder. It does appear he is competent to handle his own funds at the present time should it be determined applicable. His overall prognosis remains guarded due to the chronicity and severity of his symptom presentation.

On 06/27/2020, the claimant sees Dr. McInerney. He is there for neck pain. He is seeing Dr. Diamond for his headaches which is the main cause for Disability. Examination is not done.

On 07/01/2020, the claimant sees Dr. Welsh. It is a telemedicine visit. There are neck and low back symptoms. He notes he spends most of his entire day in his recliner at home because it is challenging for him to sit for any long periods of time or stand for long periods of time. There is severe pain in the back radiating into the legs and neck pain with occasional radiating symptoms. Medication is prescribed. The patient notes he did receive significant functional improvement from the previous injection, and it would be reasonable to repeat this.

On 09/23/2020, the claimant sees Dr. Welsh. He is there for ongoing neck pain and low back pain. Medication is helpful. There was dizziness, mental cloudiness, and nausea. He has these since the day of the accident and does not feel necessarily that it is related to his medications. Botox is planned for headaches. On exam, there is intact strength in the arms. There is a reduced range of motion. The plan is for medication.

On 09/12/2020, the claimant sees Dr. McInerney. He is there for neck pain. He still has dizziness, drowsy, blurred vision and headache pattern and occasional nausea because of the myriad of medications. The headache patterns are the most difficult for him to deal with during the day. On exam, there is cervical spasm and reduced range of motion. He is neurologically intact. The plan is for ongoing care.

On 10/06/2020, the claimant has a Functional Capacity Evaluation. The claimant did not demonstrate an ability to meet the criteria to tolerate an eight-hour workday due to decreased tolerance levels for sitting, standing, and walking. His physical demand level is unable to be classified at this time since he does not meet the full sedentary physical demand level.

On 11/07/2020, the claimant sees an unknown provider. He is there for neck pain. He still has dizziness, drowsiness with blurred vision, and headaches due to a myriad of medications. There is a minimal improvement with Botox. Headache patterns are the most difficult for him to deal with during the day. It is hard for him to be on the computer and do the work he did in the past. On exam, there is cervical spasm and reduced range of motion. He is neurologically intact. On assessment, his major problem at this time is unremitting headaches. He is struggling to do any type of light-duty work and

3

MLS Case #: 103637
Date: 4/1/2021

limited duty work due to unremitting headache patterns. This comes on once he has to start using his computer.

On 12/16/2020, the claimant sees an unknown provider. The note is difficult to read.

On 12/16/2020, there is a clinical note from Dr. Diamond. The claimant received Botox in 09/2020. These continue to help. They diminish the frequency, duration, and intensity of headaches. He describes about a 50% benefit. He is seeing Dr. Welsh for Pain Management for the neck and pain. On exam, there is normal mentation and speech. Cranial nerves are normal. Motor examination is normal. Reflexes are normal. Ambulation is normal. Coordination is normal. The plan is to continue with medications and Botox.

On 12/17/2020, Dr. Diamond answers questions. The written answer is difficult to read.

On 12/30/2020, Dr. McInerney answers questions.

On 01/18/2021, the claimant sees Dr. Welsh. He is there for pain follow-up. Recently, it has been more associated with the cervical complaint rather than his lumbar spine. Botox is beneficial for headaches. On exam, it is unchanged. Strength is normal. There is a reduced range of motion in all planes. The plan is for medication and imaging.

On 03/03/2021, Dr. McInerney writes a letter. The doctor disagrees with Dr. Hoenig's findings.

On 03/05/2021, there is a letter from the Social Security Administration. It is fully favorable.

On 03/08/2021, the claimant has an MRI of the cervical spine. There are degenerative changes that are stable when compared to the prior examination from 2018.

On 03/10/2021, the claimant sees Dr. Welsh. He is there for follow-up. Symptoms continue to progress. There are daily headaches. He was unable to take his medications because of side effects. He did have improved pain. He restarted the medication and the side effects returned with blurred vision and nausea. There are paresthesias of the hands. He denies overt weakness. On exam, he is grossly neurologically intact in the upper extremities. There is a reduced cervical range of motion. The plan is to continue with current care.

On 03/10/2021, Dr. Welsh writes a letter. The doctor is a Pain Management Specialist treating the claimant for ongoing chronic pain. He has cervical and lumbar radiculopathy and reduced range of motion to all planes in the cervical spine. There are comorbid migraine headaches being treated by Dr. Diamond. Daily headaches are a primary impairing symptom of his impairment. He consistently presents with reduced

MLS Case #: 103637
Date: 4/1/2021



range of motion and frequent pain and radiculopathy. The Functional Capacity Evaluation objectively verified cervical and lumbar impairment and coincides with the doctor's own conclusions. He is very limited in his ability to sustain the physical demands of a sustained physical position, including sitting, standing, and walking. The doctor agrees with the findings that he cannot sustain a sedentary capacity for work.

On 03/12/2021, Dr. Diamond writes a letter. The doctor is seeing the claimant for chronic post-concussive/migraine headaches. The claimant has daily headaches. He is being treated with medications, but they persist. Headaches have lessened with Botox. The doctor does not feel headaches will improve. The claimant reports inability to work due to headaches. Botox is helping a bit, but headaches continue to disable him.

## PEER-TO-PEER CONSULTATION
TELECONFERENCE #1:
    1) AP NAME: Mark Diamond MD
    2) DATE: 2/9/2021
    3) TIME: 10:49 AM
    4) PERSON SPOKEN WITH: Tara
    5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The doctor was not available. She took a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #2:
    1) AP NAME: Mark Diamond MD
    2) DATE: 2/11/2021
    3) TIME: 10:56 AM
    4) PERSON SPOKEN WITH: Tara
    5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The doctor was not available. She took a message for the doctor to call me back regarding the claimant. I was returning the doctor's call.

TELECONFERENCE #3:
    1) AP NAME: Vincent McInerney MD
    2) DATE: 2/9/2021
    3) TIME: 10:56 AM
    4) PERSON SPOKEN WITH: Maria
    5) POSITION OF PERSON SPOKEN WITH: Medical assistant

SUMMARY OF CONVERSATION: The doctor was unavailable. She took a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #4:

5

MLS Case #: 103637
Date: 4/1/2021



1) AP NAME: Vincent McInerney MD
2) DATE: 2/11/2021
3) TIME: 10:59 AM
4) PERSON SPOKEN WITH: Receptionist
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The Dr. was unavailable. I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #5:
1) AP NAME: Terrence Welsh MD
2) DATE: 2/9/2021
3) TIME: 10:59 AM
4) PERSON SPOKEN WITH: Receptionist
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The Dr. was not available. I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

TELECONFERENCE #6:
1) AP NAME: Terrence Welsh MD
2) DATE: 2/11/2021
3) TIME: 11:01 AM
4) PERSON SPOKEN WITH: Receptionist
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: The Dr. was not available. I was transferred to voicemail. I left a message for the doctor to call me back regarding the claimant.

**REFERRAL QUESTIONS & CONCLUSIONS:**

**1. You indicated in your 2/19/21 report that the FCE findings are not consistent with the exam findings in the available medical record due to a lack of documentation of neurological deficits and musculoskeletal findings of reduced cervical range of motion and cervical spasm. Please explain further what part of the medical record you found to be inconsistent with the FCE findings.**

There are no further aspects of the medical record that were found to be inconsistent with Functional Capacity Evaluation. It is still not clear why the claimant would not be able to meet the full sedentary physical demand level when there is no documentation of any neurological deficits on the exam and the only musculoskeletal finding on exam is reduced cervical range of motion and cervical spasm.

5

MLS Case #: 103637
Date: 4/1/2021

HGS210409017500 000000415 0011 0014 33



**2. Is there evidence to support chronic daily headaches and if so, would this impact his ability to sustain a 40-hour work week during the period in question 6/24/20 onward?  Please explain in detail why or why not.**

Based on the documentation provided, and from a neurological and Pain Medicine perspective only, it is acknowledged that the claimant has chronic daily headaches. The claimant is under the care of Pain Management, as well as Neurology.  The claimant is receiving medication and Botox.  There was documentation of 50% benefit with Botox.  There are no neurological deficits on exam.  There is no documentation of any significantly abnormal new pathology on any diagnostic studies.  It would be reasonable that if the claimant had a headache that requires acute care that he would no be able to work that particular day, but there are no specific physical restrictions or limitations related to the headaches.

**3. You indicated in your 2/19/21 report that the claimant has physical impairment due to pain and headache symptoms, and you acknowledged that the claimant has chronic pain. Please explain further how the claimant¿s pain and headache symptoms would impact, or not impact, his ability to function and/or sustain a 40-hour work week.**

Based on the documentation provided, and from a neurological and Pain Medicine perspective only, the claimant would have restrictions and limitations as of 06/24/2020 and onward.  The claimant has chronic neck pain and back pain.  The claimant also has headaches.  The claimant is under the care of Pain Management, Orthopedics, and Neurology.  There is no documentation of any neurological deficits on exam.  There is documentation of a reduced cervical range of motion and cervical spasm.
As a result of the headaches, it would be reasonable that if the claimant has a headache that requires acute care, that he would not be able to work that particular day, but there are no specific restrictions or limitations related to the headaches.

Regarding the cervical spine pathology, the claimant can occasionally lift and carry 20 pounds and frequently 10 pounds.  He can occasionally reach overhead.  There are no other clear physical restrictions or limitations related to cervical spine pathology.

There is no documentation of any lumbar spine pathology on exam.

**4. Does the additional information provide evidence of side effects from the claimant's medication including drowsiness, dizziness, and blurred vision during the period in question, 6/24/20 onward?  Please explain either way. If so, please explain how it would impact the claimant's ability to function on a day-to-day basis and/or for a 40-hour workweek.**

It is acknowledged that the claimant has medication side effects, however, there is no clear documentation from the medical record that this is resulting in any specific physical restrictions or limitations.

7

MLS Case #: 103637
Date: 4/1/2021




5. Based on your review of the additional information provided, is there any change from your initial assessment completed on 2/19/21? Please explain either way; and provide your detailed assessment of why there is a change or not for the period from 6/24/20, onward. In addition, please specify restrictions and/or limitations during the period in question.
Please take into consideration the totality of all his conditions including pain complaints, headache symptoms, comorbid conditions, weight, and side effects from any medications (if any); and explain how they would impact his overall function.
If there is no change in your prior assessments, please explain why your opinion differs from his treating provider(s).

Based on the documentation provided, and from a neurological and Pain Medicine perspective only, the prior opinion is unchanged. There are musculoskeletal findings on exam. There are still no neurological deficits on exam. There are no new diagnostic studies submitted for review and there is documentation that the claimant is receiving 50% benefit with Botox injections. As such, there are no specific changes in the prior opinion.

**Conflict of Interest Attestation:**
The opinion above is based on the information available for review and held to a reasonable degree of clinical certainty. I certify that I have no relationship or affiliation with the claimant whose claim is the subject of this independent review, nor a significant relationship with the treating provider(s) and/or the treatment facility. I further certify that I have no familial or material professional or business relationship, nor incentive to promote the use of any services which may be associated with the claim that is the subject of this review, nor do I have any incentive, financial or otherwise, that would lead me to offer an opinion other than based on my honest professional assessment of the information provided for review.



David Hoenig, M.D.
Board Certified: American Board of Psychiatry and Neurology, Neurology
Board Certified: American Board of Psychiatry and Neurology, Pain Medicine
Board Certified: American Board of Psychiatry and Neurology, Brain Injury Medicine
American Society of Interventional Pain Physicians
California Society of Interventional Pain Physicians
International Association for the study of Pain
International Spine Intervention Society
North American Neuromodulation Society
World Institute of Pain

MLS Case #: 103637
Date: 4/1/2021

American Academy of Neurology
4/1/2021

**Confidential**
This report is confidential and should be read only by designated Aetna Disability and
Leave Management Services staff or specific designees in accordance with the Aetna
code of Conduct and applicable law.

**Consult Level: Level 1**



MLS Case #: 103637
Date: 4/1/2021

# Exhibit 1(f)



## Network Medical Review Co. Ltd.

An ExamWorks Company

**REFERRED BY:** MEGHAN M.
**CLIENT:** Texas Instruments
**REVIEW TYPE:** Appeal
**NAME:**
**CLAIM #:**
**NMR #:**
**DATE:** 8/6/2021

## RECORDS PROVIDED FOR REVIEW:

| Juris Claim File | Case Notes | April 15, 2021 - July 29, 2021 |
|---|---|---|
| Progress Notes | J. C. Garcia, M.D. | May 07, 2021; June 23, 2021 |
| Progress Notes | S. Niemi-Olson, NP-C | June 09, 2021 |
| Progress Notes | E. I. Cubillo, IV, M.D. | July 15, 2021 |
| Appeal Letters | | July 21, 2021 |
| Job | | July 27, 2021 |
| Correspondence (Letters/E-mails) | | April 15, 2021; April 16, 2021; May 12, 2021; May 18, 2021; July 23, 2021; July 27, 2021 |
| Disability Documents | | April 16, 2021; April 21, 2021; April 30, 2021; May 03, 2021; May 12, 2021; May 18, 2021; July 22, 2021 +Undated |
| Fax Coversheets | | April 16, 2021; May 11, 2021 |
| Acknowledgement/Agreement | | April 28, 2021 |

TELECONFERENCE
    1) AP NAME: Julio Garcia MD
    2) PHONE: 520-825-2520 ext 117
    3) DATE(S): 7/30/2021
    4) TIME(S): 11:27 AM MDT
    5) PERSON(S) SPOKEN WITH: Delina
    6) POSITION OF PERSON(S) SPOKEN WITH: Office manager

SUMMARY OF DISCUSSION(S): On July 30, 2021 at 10:27 a.m. Mountain Time, I spoke with office manager, Delina. She spoke to me on behalf of the provider. The provider is a family medicine doctor. The doctor would defer neurological aspects of impairment to neurology.

**4960 E. State Street** ▪ **Rockford, IL 61108** ▪ **Phone 815.964.6334** ▪ **Fax 815.964.1162**
*website* www.nmrco.com ▪ *email* info@nmrco.com

TELECONFERENCE
    1) AP NAME: Efrain Cubillo MD
    2) PHONE: 520-999-9000
    3) DATE(S): 7/30/2021
    4) TIME(S): 11:31 AM MDT
    5) PERSON(S) SPOKEN WITH: Anna
    6) POSITION OF PERSON(S) SPOKEN WITH: Office staff

SUMMARY OF DISCUSSION(S): On July 30, 2021 at 10:31 a.m. Mountain Time, I spoke with Anna. She spoke to me on behalf of the provider. The provider is an anesthesiologist who also does pain management. He would defer neurological aspects of impairment to neurology.

TELECONFERENCE
    1) AP NAME: Stephanie Niemi-Olson NP
    2) PHONE: 520-795-7750
    3) DATE(S): 7/30/2021, 8/3/2021
    4) TIME(S): 11:40 AM MDT, 10:31 AM MDT
    5) PERSON(S) SPOKEN WITH: Tiffany, Maria
    6) POSITION OF PERSON(S) SPOKEN WITH: Receptionist, Receptionist

SUMMARY OF DISCUSSION(S): On July 30, 2021 at 10:40 a.m. Mountain Time, I spoke with Tiffany. The provider was not available. She took a message for the provider to call me back regarding the patient.

On August 3, 2021 at 9:31 a.m. Mountain Time, I spoke with Maria. The provider was not available. She took a message for the provider to call me back regarding the patient.

**NEUROLOGY SYNOPSIS:**

All information submitted was reviewed, and information relative to this reviewer's specialty is noted below.

The claimant is a female with a date of birth        . The claimant works in QRE quality. Job description includes constant computer use, occasional telephone use, and constant sitting.

There is clinical documentation prior to March 1, 2021.

On May 7, 2021, Dr. Garcia completes an FMLA form. The claimant is incapacitated from March 1, 2021 through September 1, 2021. The claimant has migraine headaches.

On June 9, 2021, the claimant sees Stephanie Olson, NP. She is there for headaches. She started having headaches in middle school after hitting her head doing gymnastics. They remained episodic until adulthood when they started to become more frequent. She also has a significant amount of neck pain after an injury. Headaches correlate with neck pain and she blames it on the neck pain. Headaches are daily. She has been to multiple neurologist. MRIs (magnetic resonance images) have been normal. She is taking multiple medications. Neurological examination shows normal mentation and speech. Cranial nerves are normal. Motor examination is normal. Reflexes are normal. Coordination is normal. Ambulation is normal. Tandem gait is normal. Sensation is normal. Romberg is negative. Plan is for medication.

On June 23, 2021, the claimant sees Dr. Garcia. She is there for chronic pain follow-up. She saw neurology. She has headaches. There is depression. There is arthritis. Neurological examination shows normal mentation and speech.

On July 15, 2021, the claimant sees Dr. Cubillo. She is there for neck pain. She had prior cervical spine fusion. She has some kind of a migraine just about every day. Neurological examination shows normal motor function. Sensation is normal. Ambulation is normal. Mentation is normal.

All available medical documentation was reviewed.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

**1. Based on the medical facts from the available records, claim documentation, and any additional information obtained from the claimant's treating provider(s), please indicate from the perspective of your specialty the nature of any functional impairment(s) the claimant has/had from 3/1/2021 - RTW or any portion of the review period that would affect his/her ability to perform the regular, unrestricted duties of his/her occupation.**

Based on the documentation provided, and from a neurological perspective only, the claimant does not have any functional impairment(s) from March 1, 2021 - RTW or any portion of the review period that would affect her ability to perform the regular, unrestricted duties of her occupation.

**2. Please specify any and all relevant medical facts, including the source, which support your determination.**

It is acknowledged that the claimant has chronic headaches. However, there is no documentation that the claimant has ongoing daily headaches based on the primary neurological etiology. There is no documentation of any neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. It is reported that the claimant had normal MRIs. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific physical restrictions and limitations. There was documentation of musculoskeletal pathology. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

**3. Please indicate, based on the reported diagnosis and the medical facts available why you agree or disagree with the treating provider's opinion regarding the claimant's level of functional impairment.**

I disagree with the attending provider. It is acknowledged that the claimant has chronic headaches. However, there is no documentation that the claimant has ongoing daily headaches based on the primary neurological etiology. There is no documentation of any neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. It is reported that the claimant had normal MRIs. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific physical restrictions and limitations. There was documentation of musculoskeletal pathology. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

**4. If you have determined that the available information is lacking in the kinds of examination findings important to document impairment, please indicate the types of examination findings that could be obtained during the course of a typical examination that are missing.**

Information is not lacking.

**5. If the claimant has been seen for telemedicine/virtual visits, would the noted observations, reported complaints, frequency of visits, and treatment rendered support a functional impairment and/or the need for restrictions?**

Not applicable.

**6. During the period of review (or portion thereof), if you have determined the claimant is/was impaired, what is a reasonable estimated RTW date or when might it be appropriate to re-assess the impact of any proposed/current treatment(s) on functional ability to RTW?**

Not applicable. The claimant is/was not impaired.

**7. If you have determined that the claimant does have functional impairment(s), please indicate from the perspective of your specialty any restrictions and/or limitations that the treating provider might have agreed to during your telephonic consultation or that could be presented to the treating provider that might facilitate the claimant's return to work. Please be specific (i.e., cannot lift more than 25 pounds rather than no heavy lifting) and indicate when it would be appropriate to review if the restriction(s) remain necessary. Please note restriction(s) can include a portion of the review period and/or a period in the past. If it is your determination that no restrictions are supported, please advise what led you to this determination.**

Not applicable. The claimant is/was not functionally impaired as there is insufficient objective data to support a need for restrictions.

**8. Please indicate any comorbid conditions/medication side effects the claimant has and their effect, if any, on the claimant's occupational functioning and/or recovery from the impairing condition. Please refer to the relevant medical facts of the case, including the source, that support your answer.**

Side effects resulting in impairment are not identified. There was documentation of musculoskeletal pathology. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

**RATIONALE:**

The claimant is a female with a date of birth August 6, 1960. The claimant works in QRE quality. Job description includes constant computer use, occasional telephone use, and constant sitting.

It is acknowledged that the claimant has chronic headaches. However, there is no documentation that the claimant has ongoing daily headaches based on the primary neurological etiology. There is no documentation of any neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. It is reported that the claimant had normal MRIs. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there

are no specific physical restrictions and limitations. There was documentation of musculoskeletal pathology. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

Based on the documentation provided, and from a neurological perspective only, the claimant does not have any functional impairment(s) from March 1, 2021 - RTW or any portion of the review period that would affect her ability to perform the regular, unrestricted duties of her occupation.

## CONFLICT OF INTEREST ATTESTATION:

I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge, I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee; the health care provider, the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.

This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.

## ADVISING REVIEWER:

David Hoenig, M.D.
Board Certified in Neurology
Board Certified in Pain Medicine
Board Certified in Brain Injury Medicine
Licensed in State of CA #A82847

*NMR Conflict of Interest Attestation:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

# Exhibit 1(g)



**MES Case Number:** ▮

## Physician Review

**CLAIM DATA**
**ID Number:** ▮
**Last Name:** ▮                                    **First Name:** ▮
**DOB:** ▮
**Claim Number:** ▮
**First Date of Absence:** 05/28/2018              **Employer:** BOOZ ALLEN HAMILTON INC.
**Claim Type:** LTD                                **Insurance Carrier:** Insured, AETNA LIFE
                                                   INSURANCE
                                                   COMPANY
**Disability Test:** N/A                           **Occupation/Job Title:** SYSTEMS
                                                   ENGINEER SR

**Physical Demand Rating:** Sedentary
**Specific Vocational Preparation (SVP) Rating:** N/A
**Prior Reviewer(s):** MES Solutions
**Diagnosis(es):** G43.709 - CHRONIC MIGRAINE WITHOUT AURA, NOT INTRACTABLE, WITHOUT
STATUS MIGRAINOSUS

**REFERRAL INFORMATION**
**Last Name:** MOLINA                              **First Name:** ANA
**E-mail contact:** Ana.Molina@thehartford.com
**Requester's Phone Number:**                      **Extension:**
N/A
**Claim Office:** None Listed
**Submission Date:** 1/20/2022                     **Perfection Date:**
**Appeal:** NO
**Addendum:** NO
**Telephonic Consultation with Provider Requested:** Yes
**Specialty Requested:** Neurology

**PROVIDER CONTACT INFORMATION**
**Treating Provider's Name (1):** ▮
**Treating Provider's Specialty (1):** Family Practice
**Phone Number:** ▮                                **Time Zone:** Eastern Time
**Question(s):** When speaking to AP, please discuss the claimant's medical conditions and
functionality, and ask any specific questions that you would like to consider in your assessment.
**Special Handling Instructions:** n/a

**Treating Provider's Name (2):** ▮
**Treating Provider's Specialty(2):** Neurology
**Phone Number:** ▮                                **Time Zone:** Eastern Time
**Question(s):** When speaking to AP, please discuss the claimant's medical conditions and
functionality, and ask any specific questions that you would like to consider in your assessment.
**Special Handling Instructions:** n/a

MES Case #: ▮
Date: 2/3/2022



**REVIEWING PHYSICIAN DATA**
Reviewer Assigned: MES
Specialty Assigned: Neurology                    Assignment Date: 1/20/2022

**RECORDS SUBMITTED FOR REVIEW:**
Medical
1. MR
Correspondence  Peter Casciano  06/06/2022
Office/ Clinical Notes ▮      11/30/2021, 08/30/2021, 06/01/2021, 03/09/2021,
09/23/2020, 12/26/2019,
Progress Notes ▮     11/22/2021, 06/04/20128,
Office Visit Notes ▮      10/11/2021
Progress Notes ▮     05/10/2021
XR Chest  05/15/2020
CT Abd and Pelvis  05/15/20220
Procedure note  01/30/2020
Procedure Note  05/20/2020
Operative/ Procedure Report ▮     06/09/2020,
Operative Report ▮      05/03/2020, 06/09/2020, 08/02/2019, 07/16/2019,
Office Visit Notes ▮     07/01/2019
Surgical Pathology Report  07/16/2019
Daily Note  04/09/2019, 04/04/2019, 04/02/2019, 03/28/2019, 03/26/2019,
03/12/2019, 03/08/2019,
Physical Therapy Initial Examination  03/08/2020,
Office/ Clinical Notes ▮      10/05/2018
Office/ Clinical Notes ▮      12/20/2018, 03/14/2019, 10/05/2018, 08/25/2018,
10/28/2018,
EE Resume
Progress Notes ▮     10/24/2018
Office Visit Notes ▮      10/23/2018, 10/23/2018,
Physical Therapy ▮10/09/2018, 10/15/2018,
Chart Note▮ 09/21/2018,
Office Visit Notes
Office Visit Notes ▮     08/08/2018, 07/11/2018,
Forms
1. APS
▮ 01/18/20202
▮ 06/05/2018
06/05/2018, 05/30/2018

2. Claim Form
Auth  06/05/2020

**CLAIM SYNOPSIS:**
64 y.o.f. Management/Process Analyst w/FDA 5/28/18 & DOD 5/26/18. OOW d/t chronic migraine

2

MES Case #: ▮
Date: 2/3/2022



without aura, insomnia, polyneuropathy from chemo treatment, numbness in feet. Has a history of anxiety disorder, MDD, conduct disorder, and other muscle spasm. Appeal letter from attorney indicated that claimant filed for disability benefits d/t sx stemming from chronic migraine & insomnia, among other issues. The term decision is not correct because it ignored the opinion of her treating providers, & the claimant's statements & the objective findings of the SSA. He stated that Dr. Glass (the peer reviewer) made errors resulting in a flawed report that should be ignored by HIG. Dr. Glass' errors amount to HIG failure to provide claimant w/a full & fair review as required by Dept of Labor Regulations. Dr. Glass never spoke w/the treating providers. Treating providers were given a little over 24 hours to return pc. Claimant underwent cognitive testing to show the specific limitations caused by her conditions. Ms. _____, MA, CRC, NCC, LCPC perform the test & voc analysis. Scores did not rise to the levels that correlate w/success in the Business Professional occupational cluster of jobs. Voc Eval, 10/11/21, _____ concluded that claimant is not capable of performing past work as a Systems Engineer/Systems Analyst or any skilled work requiring to perform sustained computer use.

Referral to independent peer review specializing in Neurology.

## CLINICAL FILE REVIEW:

I have reviewed all of the records listed above. I will directly comment upon information most relevant to the question(s) posed and the time period(s) in question.

There is clinical documentation prior to June 3, 2021. There is clinical documentation from 2018, 2019, 2020 and 2021 prior to June 3, 2021.

On March 9, 2021, the claimant sees _____. She is there for Botox. With Botox and medication, she has daily low-grade headaches. She has one to two days per month of a severe headache. Before they were daily severe headaches. Botox is given.

On May 10, 2021, the claimant sees _____. She is there for forms. She has headaches. She has been on disability for two years because of migraines. She can only sit in front of a computer more than two minutes until she gets a headache. Cancer and neuropathy are stable. When she is on the computer, she gets eyestrain across her brow and behind her ears. Neurological examination is not done.

On June 1, 2021, the claimant sees _____. She is there for Botox. If she looks on the computer she will get a severe headache within minutes. With Botox and medication, she has daily low-grade headaches. She has one to two days per month of a severe headache. Before they were daily severe headaches. Neurological examination shows normal mentation and speech. Cranial nerves are normal. Ambulation is normal. Botox is given.

On August 30, 2021, the claimant sees _____. She is there for Botox. With Botox and medication, she has daily low-grade headaches. She has one to two days per month of a severe headache. Before they were daily severe headaches. Botox is given.

On November 22, 2021, the claimant sees _____. She is there for general follow-up. She has neuropathic pain. Neurological examination is not done. She has anxiety, depression, migraines, ADHD, and neuropathy.

3

MES Case #: _____
Date: 2/3/2022

DCN:220207000751 Page:005 Sequence:SWE0207202200000019 TimeStamp: 04:05:26:AM

MES
Peer Review Services.

On November 30, 2021, the claimant sees███████████ She is there for Botox. She is unable to tolerate cognitive efforts or prolonged screen time as this exacerbates migraines. With Botox and medication, she has 16 days of headaches a month. Before they were daily severe headaches. MRI of the brain from 2017 is normal. Neurological examination shows normal mentation and speech. Cranial nerves are normal. Ambulation is normal. Botox is given.

## PEER-TO-PEER CONSULTATION:

On January 25, 2022 at 7:05 AM PST, I left a message on the voicemail for the doctor to call me back regarding the claimant. On January 26, 2022 at 7:08 AM PST, I left a message on the voicemail for the doctor to call me back regarding the claimant.

████████

On January 25, 2022 at 7:10 AM PST, I left a message on the voicemail for the provider to call me back regarding the claimant. On January 26, 2022 at 7:12 AM PST, I left a message on the voicemail for the doctor to call me back regarding the claimant.

## QUESTIONS FOR PROVIDER:
Question(s) to ████████
1. When was the claimant last seen?
2. How often is the claimant seen?
3. Are there any neurological deficits on exam?
4. Are there any significantly abnormal neurological diagnostic studies?
5. Are there any restrictions and limitations?
6. If so, what are they, and why?
7. Are there any mental health comorbidities?

Question(s) to ████████
1. When was the claimant last seen?
2. How often is the claimant seen?
3. Are there any neurological deficits on exam?
4. Are there any significantly abnormal neurological diagnostic studies?
5. Are there any restrictions and limitations?
6. If so, what are they, and why?
7. Are there any mental health comorbidities?

## REFERRAL QUESTIONS & CONCLUSIONS:
**1. As of 06/03/2021 to the present, does the medical evidence support any specific restrictions and limitations based on chronic migraine without aura, insomnia, polyneuropathy, numbness in feet, or any other medical conditions? Please be specific and list the restrictions and limitations.**

Based on the documentation provided, and from a neurological perspective only, the claimant does not have any specific physical restrictions and limitations as a result of chronic migraine without aura, insomnia, polyneuropathy, and numbness in feet. There is no documentation of any specific primary neurological etiology pertaining to insomnia. Regarding neuropathy and numbness in the feet, there is no documentation of the detailed history and physical

4

MES Case #:████████
Date: 2/3/2022

DCN:220207000751  Page:006  Sequence:SWE0207202200000019  TimeStamp: 04:05:26:AM



examination pertaining to neuropathy submitted for review. The claimant is under the care of neurology, but neurology is only treating the claimant's migraines. There is no documentation of any significantly abnormal neurological diagnostic studies pertaining to neuropathy. As such, impairment related to neuropathy/numbness in the feet is not supported.

It is acknowledged that the claimant has migraine headaches. The claimant is under the care of neurology and current treatment with medication and Botox resulted in significant improvement in the headaches. There are no neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. MRI of the brain is reported to be negative. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific physical restrictions and limitations pertaining to migraines. There is documentation of mental health pathology. This may be a factor in impairment, but is beyond the scope of a neurological perspective. There is documentation of possible ocular pathology as there is documentation that eyestrain results in a headache. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

**2. Do you agree/disagree with the opinions from her treating providers that she cannot perform full time work?  Yes/No.  Please provide your full rationale.**

I disagree with the attending provider that the claimant cannot perform full-time work from a neurological perspective.

Based on the documentation provided, and from a neurological perspective only, the claimant does not have any specific physical restrictions and limitations as a result of chronic migraine without aura, insomnia, polyneuropathy, and numbness in feet. There is no documentation of any specific primary neurological etiology pertaining to insomnia. Regarding neuropathy and numbness in the feet, there is no documentation of the detailed history and physical examination pertaining to neuropathy submitted for review. The claimant is under the care of neurology, but neurology is only treating the claimant's migraines. There is no documentation of any significantly abnormal neurological diagnostic studies pertaining to neuropathy. As such, impairment related to neuropathy/numbness in the feet is not supported. It is acknowledged that the claimant has migraine headaches. The claimant is under the care of neurology and current treatment with medication and Botox resulted in significant improvement in the headaches. There are no neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. MRI of the brain is reported to be negative. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific physical restrictions and limitations pertaining to migraines.

**3. As of 06/03/2021 to the present, do the records support any specific treatment and testing that addresses her functionality based on her chronic migraine without aura, insomnia, polyneuropathy, numbness in feet, or any other medical conditions?**

Based on the documentation provided, and from a neurological perspective only, the claimant does not have any specific treatment and testing that address functionality based on her chronic migraine without aura, insomnia, polyneuropathy, and numbness in feet. There is no

5



MES Case #:
Date: 2/3/2022



MES
Peer Review Services

documentation of any specific primary neurological etiology pertaining to insomnia. Regarding neuropathy and numbness in the feet, there is no documentation of the detailed history and physical examination pertaining to neuropathy submitted for review. The claimant is under the care of neurology, but neurology is only treating the claimant's migraines. There is no documentation of any significantly abnormal neurological diagnostic studies submitted for review. MRI of the brain is reported to be negative. There is no documentation of any specific treatment that addresses functionality aside from medication and Botox which has improved the claimant's headaches.

### 4. Based on the records reviewed can the claimant perform sustained computer use? Would she be limited on using a computer? Please provide full rationale/opinion.

Based on the documentation provided, and from a neurological perspective only, there insufficient supporting clinical information that the claimant cannot perform sustained computer use or limited computer use. The claimant is under the care of neurology and current treatment with medication and Botox resulted in significant improvement in the headaches. There are no neurological deficits on exam. There is no documentation of any significantly abnormal neurological diagnostic studies. MRI of the brain is reported to be negative. It would be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day. Otherwise, there are no specific physical restrictions and limitations pertaining to computer use. There is documentation of possible ocular pathology as there is documentation that eyestrain results in a headache. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

### 5. Do the records support any specific barriers that prevents claimant from performing any of her activities of daily living? (Please list each of them and be specific)

There is documentation of sleep dysfunction. This may be a factor in impairment, but is beyond the scope of a neurological perspective. There is documentation mental health pathology. This may be a factor in impairment, but is beyond the scope of a neurological perspective.

### 6. Does the intensity of treatment (i.e., frequency of treatment and medication use) match a level of impairment which would prevent functionality at all levels, as of 06/03/2021 to the present?

No, the intensity of treatment does not clearly match the level of impairment that would prevent functionality at all levels as of June 3, 2021 to the present. The claimant is under the care of neurology periodically for Botox treatment. It is not clear why there would not be more frequent neurological visits, as well as additional treatment, if the claimant is having ongoing impairing headaches.

### 7. Please correlate the self-reported functioning with the available medical information/findings and comment on any consistencies or inconsistencies.

Inconsistencies are not identified.

6

MES Case [ ]
Date: 2/3/2022

DCN:220207000751  Page:008  Sequence:SWE0207202200000019  TimeStamp: 04:05:26:AM



**Conflict of Interest Attestation:**

*I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case. To the best of my knowledge I was not involved with the specific episode of care prior to referral of the case for review. I do not have a material professional, familial, or financial conflict of interest (financial conflict of interest is defined as ownership interest of greater than 5%) regarding any of the following: the referring entity; the insurance issuer or group health plan that is the subject of the review; the covered person whose treatment is the subject of the review and the covered person's authorized representative, if applicable; any officer, director or management employee of the insurance issuer that is the subject of the review; any group health plan administrator, plan fiduciary, or plan employee, the health care provider; the health care provider's medical group or independent practice association recommending the health care service or treatment that is the subject of the review; the facility at which the recommended health care service or treatment would be provided; or the developer or manufacturer of the principle drug, device, procedure or other therapy being recommended for the covered person whose treatment is the subject of the review.*

*I attest that I have a scope of licensure or certification and professional experience that typically manages the medical condition, procedure, treatment, or issue under review.*



David B. Hoenig, M.D.
Board Certified in Neurology
Subspecialty Certificate in Pain Medicine
CA License #82847
2/3/2022

## Confidential

This report is confidential and should be read only by designated staff or specific designees of The Hartford Disability and Leave Management Services in accordance with The Hartford Code of Conduct and applicable law.

7

MES Case #:
Date: 2/3/2022

# Exhibit 1(h)

# David B. Hoenig, M.D.
## Neurology/Pain Management

---

**CLAIMANT NAME:** ███████████

**EXAMINER:** David B. Hoenig, M.D.

**ECN #:** 170747-6

**CLAIM #:** ███████

**DATE OF INJURY:** 12/27/2017

**ADDENDUM; 7/22/21:**

**CLINICAL SUMMARY:**

On 03/30/2021, the claimant sees Kyle Estep, NP. She is there for migraines. She was last seen by Dr. McFarland in 03/2020. She has a history of pituitary adenoma, previous concerns for hemorrhage. However, the last radiologist suggested signal abnormalities in the pituitary gland relate to transient conditions during pregnancy.

She has a history of migraines. She has seen several neurologists and other specialists due to symptoms but has had trouble finding the exact etiology of the symptoms. There were visual changes in syncope. Symptoms can come at random. Migraines have increased since giving birth. Migraines are once a week. She will have headaches throughout the week. She has syncopal episodes, 1 or 2 episodes per week. She had EEG cardiac workup and autonomic workup with no abnormal findings. She had normal tilt table test. She saw Ophthalmology, who found no abnormalities. She has a history of fibromyalgia. Neurological examination shows normal mentation and speech. Cranial nerves are normal. Motor examination is normal. Reflexes are normal. Sensation is normal. Coordination is normal. Ambulation is normal. Plan is for medication.

On 03/16/2021, the claimant sees a provider whose name I cannot read. It is an osteopathic provider.

On 01/26/2021, the claimant sees a provider whose name I cannot read. It is an osteopathic provider.

On 11/10/2020, the claimant sees a provider whose name I cannot read. It is an osteopathic provider.

On 09/22/2020, the claimant sees a provider whose name I cannot read. It is an osteopathic provider.

On 07/28/2020, the claimant sees a provider whose name I cannot read. It is an osteopathic provider.

On 05/28/2020, the claimant sees a provider whose name I cannot read. It is an osteopathic provider.

**RE:  Sabrina Franklin**
**Page 2**

On 03/26/2020, the claimant sees a provider whose name I cannot read.  It is an osteopathic provider.

On 01/30/2020, the claimant sees a provider whose name I cannot read.  It is an osteopathic provider.


**RESPONSE TO QUESTIONS:**

**1. Please review the additional medical information and advise if it alters your prior opinion stated in your report. Please explain why or why not.**

Based on the additional documentation provided and from a neurological and pain medicine perspective only, the claimant still does not have any restrictions and limitations beyond 02/17/2021 to the present.  It is still acknowledged the claimant has headaches.  However, there is no documentation of any particular specific physical impairment as it would relate to headaches.  There are no neurological deficits on exam.  There is no documentation of any significantly abnormal updated neurological diagnostic studies submitted for review. There is documentation that the last radiologist suggested signal abnormalities in the pituitary gland relate to transient conditions during pregnancy, not hemorrhage.  There is no documentation of a detailed history and physical examination by Pain Management submitted for review.  It would still be reasonable that if the claimant has a headache that requires acute care that she would not be able to work that particular day.  Otherwise, there are no specific physical restrictions and/or limitations.

**2. You were previously asked to specifically comment as to whether the claimant would be able to consistently/reliably perform a work schedule of 3 (10) hour days. Though you opined on a total number of hours the claimant could work per week, could you also make comment as to the noted work schedule of 3 (10) hour days.**

Based on the additional documentation provided and from a neurological and pain medicine perspective only, the claimant would be able to consistently/reliably perform a work schedule of three 10-hour days.



**RE: Sabrina Franklin**
**Page 3**

David B. Hoenig, M.D.
Diplomate, American Board of Psychiatry and Neurology, Pain Medicine
Diplomate, American Board of Psychiatry and Neurology, Brain Injury Medicine
California License #82847

DBH/kv