1

2

3

4

5

6                          **IN THE UNITED STATES DISTRICT COURT**

7                             **FOR THE DISTRICT OF ARIZONA**

8

9    Sabrina Franklin,                              No. CV-22-00168-TUC-JAS

10                  Plaintiff,                        **ORDER**

11   v.

12   Hartford   Life   and   Accident   Insurance
     Company,
13
                    Defendant.
14

15          Pending before the Court are three motions filed by Plaintiff: motion to compel

16   (Doc. 47), motion to enforce completeness of the administrative record/motion to compel

17   (Doc. 67),[1] and objection to Defendant's designation of certain information as confidential

18   (Doc. 51).  Upon review of the motions, oppositions, replies, attachments, and pertinent

19   record and authority, Plaintiff's motions are granted and the objection is sustained.[2]

20   Discussion

21          This is an ERISA case whereby Plaintiff alleges that Defendant wrongfully denied

22   her long term disability benefits under her Long Term Disability policy ("LTD Plan" or

23   "Plan") with Defendant.  The discovery-related motions at bar primarily pertain to

24   Plaintiff's pursuit of information that may bear on Defendant's conflicts of interest in this

25   case.

26          As a threshold matter, Defendant is both the administrator of the LTD Plan and the

27   ─────────────
     [1] The Court notes that Docs. 43 and 57 are duplicative of Docs. 47 and 67.
28   [2] Because the briefing is adequate and oral argument will not help in resolving this matter, oral argument is
     denied.  *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200-1201 (9th Cir. 1999).

1   payor under the LTD Plan; the Plan also specifies that Defendant has discretion in
2   evaluating the validity of beneficiaries' claims for LTD benefits under the Plan.

3        In such circumstances, Defendant has a structural conflict of interest and Plaintiff
4   is entitled to discovery relating to conflicts of interest as the Court must weigh any conflicts
5   in determining whether Defendant abused its discretion in denying Plaintiff benefits. *See*,
6   *e.g.*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965-71 (9th Cir. 2006)[3] ("We have
7   held that an insurer that acts as both the plan administrator and the funding source for
8   benefits operates under what may be termed a structural conflict of interest . . . On the one
9   hand, such an administrator is responsible for administering the plan so that those who
10  deserve benefits receive them. On the other hand, such an administrator has an incentive
11  to pay as little in benefits as possible to plan participants because the less money the insurer
12  pays out, the more money it retains in its own coffer . . . [In these circumstances, a district
13  court's review for an abuse of discretion is] informed by the nature, extent and effect on
14  the decision-making process of any conflict of interest . . . A district court, when faced with
15  all the facts and circumstances, must decide in each case how much or how little to credit
16  the plan administrator's reason for denying insurance coverage. An egregious conflict may
17  weigh more heavily (that is, may cause the court to find an abuse of discretion more readily)
18  than a minor, technical conflict might. But in any given case, all the facts and circumstances
19  must be considered . . . We recognize that abuse of discretion review, with any conflict . .
20  . weighed as a factor . . . is indefinite. We believe, however, that trial courts are familiar
21  with the process of weighing a conflict of interest. For example, in a bench trial the court
22  must decide how much weight to give to a witness' testimony in the face of some evidence
23  of bias. What the district court is doing in an ERISA benefits denial case is making
24  something akin to a credibility determination about the insurance company's or plan
25  administrator's reason for denying coverage under a particular plan and a particular set of
26  medical and other records. We believe that district courts are well equipped to consider the
27  particulars of a conflict of interest, along with all the other facts and circumstances, to

28

---

[3] Unless otherwise noted by the Court, internal quotes and citations have been omitted when quoting and citing cases throughout this Order.

determine whether an abuse of discretion has occurred . . . A subtler question arises when a [district] court must decide how much weight to give a conflict of interest under the abuse of discretion standard. In making that determination, the [district] court may consider evidence outside the record. We have held that the [district] court may consider evidence beyond that contained in the administrative record that was before the plan administrator, to determine whether a conflict of interest exists that would affect the appropriate level of judicial scrutiny . . . The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise."); *Montour v. Hartford Life & Accident Ins. Co*, 588 F.3d 623 (9th Cir. 2009) (same); *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893 (9th Cir. 2016) (same).

Regarding these issues, Plaintiff's motion (Doc. 47) seeks an Order from the Court compelling Defendant to: produce 100 prior reports from MLS and from ECN for the years 2020 and 2021; produce 100 prior reports from each of Dr. Parillo, Dr. Marwah, and Dr. Hoenig for the years 2020 and 2021; produce internal claim metrics and tracking documents; and produce the claim and appeal adjusters who decided Plaintiff's claim for depositions. Under the circumstances of this case and in light of Ninth Circuit authority, Plaintiff's discovery is warranted and Defendant shall provide this information to Plaintiff by[4] no later than 1/31/24.[5] Likewise, the Court agrees that Plaintiff's position reflected in

---

[4] In light of the holidays, the Court has allotted extra time in this case; the parties are free to extend these deadlines by stipulation.

[5] *See id.*; *see, e.g., Abatie*, 458 F.3d at 968 ("A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it . . . The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial . . . fails adequately to investigate a claim or ask the plaintiff for necessary evidence . . . fails to credit a claimant's reliable evidence . . . or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record."); *Montour*, 588 F.3d at 633-634 (discussing "signs of bias" exhibited by the defendant LTD plan administrator and criticizing the plaintiff as he "did not submit any extrinsic evidence of bias, such as statistics regarding [the LTD plan administrator's] rate of claims denials or how frequently it contracts with the file reviewers it employed in this case."); *Demer*, 835 F.3d at 899-903 (Discussing conflicts of interest relating to the defendant LTD plan administrator: "[Plaintiff] Mr. Demer claims [Defendant] MetLife operated under a conflict of interest because two of the IPCs [i.e., Independent Physician Consultants] that MetLife hired to

1

2  review the medical record, Dr. Del Valle and Dr. Gordan, have done a substantial number of reviews for
MetLife and received significant compensation from MetLife for their services. For 2009 and 2010, Dr.
3  Del Valle performed more than 250 reviews/addendums each year and earned more than $125,000 each
year; for the same time period, Dr. Gordan performed between 200–300 reviews/addendums each year and
4  earned more than $175,000 each year. Based on the number of reviews and the amount of compensation,
Mr. Demer asserts that the opinions of Dr. Del Valle and Dr. Gordan should be questioned because the
5  doctors had financial incentives to render opinions favorable to MetLife. Mr. Demer further argues that,
because MetLife relied on the doctors' opinions in denying him relief, the doctors' conflict is, in effect,
6  imparted to MetLife . . . As a preliminary matter, we note that Mr. Demer's argument here is comparable to
conventional approaches to discrediting the testimony of retained experts whose objectivity may be
7  challenged based on, *e.g.*, the number of times he or she has served as an expert in support of a party and
the amount of compensation received. This alleged conflict of interest is distinct from the purported
8  structural conflict of interest discussed above. The lack of any structural conflict of interest on the part of
MetLife does not preclude MetLife from having a conflict of interest based on an IPC's financial interests;
9  the factors that raise the possibility of a structural conflict relate to the incentives applicable to MetLife's
claims department, whereas the factors that raise the possibility of a financial conflict relate to the incentives
10  applicable to MetLife's retained experts. Even if MetLife operated with no structural conflict, reliance on
the reports of its retained experts who have a financial incentive to make findings favorable to MetLife may
11  warrant skepticism." In addition, the plaintiff was rebuked for failing to more thoroughly develop further
evidence of bias: "To be sure, the lack of more powerful evidence that, *e.g.*, the IPCs had some specific
12  stake in the outcome of Mr. Demer's case . . . or of statistics showing a parsimonious pattern of assessments
disfavorable to claimants . . . minimizes the weight [assigned] to the conflict of interest as a factor in the
13  overall analysis of whether an abuse of discretion occurred . . . But that lack of such specific evidence does
not mean that there is no conflict of interest. Here, we have evidence of not only the frequency of reviews
14  for MetLife but also the significant dollar amounts earned by the reviewers. Furthermore, that Mr. Demer
could have, but did not, develop a stronger record of the IPCs' conflict of interest does not mean that there
15  is no conflict."; "[Plaintiff] objects to the district court's reliance on the declarations from two employees,
Gregory Hafner and Laura Sullivan, who describe the affirmative steps taken by MetLife to reduce its
16  structural conflict, on the ground that neither Mr. Hafner nor Ms. Sullivan was disclosed as a witness in
MetLife's initial disclosures as required by Federal Rule of Civil Procedure 26. MetLife did not explain its
17  failure to identify witnesses in its mandatory initial disclosures; on the other hand, [Plaintiff] did not explain
his failure to take a 30(b)(6) deposition on the structural conflict issue."); *Salomaa v. Honda Long Term*
18  *Disability Plan*, 642 F.3d 666, 674-75 (9th Cir. 2011) ("The administrator of the [long term disability] plan
before us has a conflict of interest, as the term is used in ERISA cases, because the insurer acts as both
19  funding source and administrator . . . We know that we are supposed to weigh a conflict of interest in
deciding how skeptical to be of the administrator's decision, according varying weight to it depending on
20  other factors, but that is a hard standard to apply. Weighing is a metaphor. Real weighing is done with a
scale . . . [O]ur weighing is done without a scale, without the little brass weights, and without a substance
21  to weigh that has any weighable mass . . . Nor is it easy to decide how many metaphorical grams should go
on the metaphorical scale when we pretend to weigh conflicts of interest. The misleading precision of the
22  metaphor is indeed a serious concern, because of the special protection the statute gives to insurance
companies against claims. An insurance company that approaches claims-handling unfairly in an ERISA
23  plan may have an incentive to be more unfair than, say, a life insurer or auto-liability insurer, because it
cannot be subjected to the punitive damages for bad faith that are the bogeymen of insurance companies in
24  those fields. Usually the record does not disclose an insurance company's claims-handling history in other
cases or its internal directives to claims managers about how to evaluate claims. Thus we are ordinarily
25  ignorant of much of what we are supposed to weigh. For all we know, the claims administrator evaluating
[the plaintiff's] claim would be voted for promotion based on the percentage of claims rejected, or had
26  formed a personal opinion (or her boss had) that all chronic fatigue syndrome claims were fraudulent . . .
We must judge the reasonableness of the plan administrator skeptically where, as here, the administrator
27  has a conflict of interest. Even without the special skepticism we are to apply in cases of conflict of interest,
deference to the plan administrator's judgment does not mean that the plan prevails. Deference is not a
28  talismanic word that can avoid the process of judgment. The conflict of interest requires additional
skepticism because the plan acts as judge in its own cause.").

1  her other discovery-related motions (Docs. 67, 51) is correct, and therefore Plaintiff's

2  objection (Doc. 51) is sustained[6], and Defendant shall provide the information sought in

3  Plaintiff's motion (Doc. 67) by no later than 1/31/24.[7]

4

5

6  Dated this 7th day of December, 2023.

7

8

9

10

11

12

13  Honorable James A. Soto
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24  [6] Plaintiff correctly argues that there has been no showing of specific prejudice and harm stemming from
    unsealing the two and three year old vendor and reviewer data at issue in Plaintiff's objection; the
25  presumptive right of public access to such records has not been overcome and this information is hereby
    ordered unsealed.  The Court has attached an unsealed copy of the document in question (Doc. 42-6) to this
26  Order.
    [7] The Court notes that Defendant argues that Plaintiff has already sought the information requested in Doc.
27  67 and such information may not exist.  Nevertheless, Defendant shall undertake efforts to obtain the
    information sought in Doc. 67 going forward by 1/31/24; if such information cannot be obtained (or no
28  longer exists for some reason), Defendant shall file a declaration(s) (under penalty of perjury) specifying
    all the efforts it undertook to obtain the information in question and why those efforts bore no fruit.

1   Kristina N. Holmstrom (SBN 023384)
    OGLETREE, DEAKINS, NASH, SMOAK &
2   STEWART, P.C.,
    Esplanade Center III, Suite 800
3   2415 East Camelback Road
    Phoenix, AZ 85016
4   Telephone: 602-778-3700
    Fax: 602-778-3750
5   kristina.holmstrom@ogletree.com

6   *Attorneys for Defendant Hartford Life and Accident*
    *Insurance Company*

7

8                   **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF ARIZONA**

10  Sabrina Franklin,                  No.  4:22-cv-00168-JAS

11              Plaintiff,             **HARTFORD LIFE AND ACCIDENT
                                       INSURANCE COMPANY'S**
12          v.                         **SUPPLEMENTAL RESPONSES TO
                                       PLAINTIFF'S FIRST SET OF
13  Hartford Life and Accident Insurance   REQUESTS FOR PRODUCTION OF
    Company,                           DOCUMENTS AND FIRST SET OF**
14                                     **INTERROGATORIES**
              Defendant.
15

16

17      Defendant Hartford Life and Accident Insurance Company (hereinafter "Hartford" or

18  "Defendant"), hereby supplements its response and objects to Plaintiff Sabrina Franklin's

19  ("Plaintiff") First Set of Requests for Production of Documents and First Set of Interrogatories, as

20  follows:

21                  <u>**REQUESTS FOR PRODUCTION OF DOCUMENTS**</u>

22
        <u>**Request for Production No. 1:**</u>  Produce any and all Documents or Communications that
23
    refer in any way to Plaintiff and which are not included within Plaintiff's claim file or ERISA
24
    "administrative record."
25
        <u>**Response:**</u>  Information responsive to this Request for Production is set forth in the claim
26
    file that Hartford has produced. Accordingly, pursuant to Federal Rule of Civil Procedure 33(d),
27

28

1   Hartford directs Plaintiff to the claim file (otherwise referred to as the "Administrative Record")[1]

2   as that would contain the relevant and substantive information pertaining to the Plaintiff's claim

3   for benefits that is the subject of this lawsuit.

4   **Supplemental Response:   Without foregoing the above objections, Hartford**

5   **supplements its response as follows:   *See* relevant emails and instant messages**

6   **(HLAICSFRFP000105-138)(Confidential Subject to Stipulated Protective Order), produced**

7   **herewith via ShareFile FTP link pursuant to entry of January 27, 2023 Stipulated Protective**

8   **Order (ECF 39).**

9   **Request for Production No. 2:** For the period January 1, 2020 through December 31,

10   2021, produce any and all reports of disability file reviews You have received (either directly or

11   through any external review company or other source) from any of the following reviewers:

12   • Lucien Parillo, M.D.

13   • Rajendra Marwah, M.D.

14   • David Hoenig, M.D.

15   **Response:** Hartford objects to this Request for Production as the question seeks private,

16   confidential, and highly protected medical reports of individuals who are not a party to this lawsuit,

17   nor are their claims at issue in this lawsuit. Hartford further objects on the grounds that the

18   disclosure sought would constitute a direct violation of HIPAA and other federal privacy laws that

19   protect sensitive and confidential medical information. Hartford further objects to the extent this

20   Request for Production seeks information which is beyond the reasonable scope of discovery in

21   this ERISA case by seeking any and all reports of disability file reviews generated by Dr. Lucien

22   Parillo, Dr. Rajendra Marwah and Dr. David Hoenig, none of which are employed by Hartford and

23   spanning a two year period of time. Hartford further objects to as this request is overly broad in

24   scope, unduly burdensome and oppressive. The reports sought have no relevance to the whether

25   Hartford abused its discretion in determining that Plaintiff had not met her burden of proving

26

27   ───────────────

28   [1] The Administrative Record was previously produced on August 3, 2022.

2

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

OGLETREE, DEAKINS, NASH, SMOAK &
WART, P.C.
ESPLANADE CENTER III, SUITE 800,
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1  disability and entitlement to benefits beyond February 18, 2021, which is the subject of this lawsuit
2  and this request is not proportional to the needs of this case.

3  **Request for Production No. 3:** For the period January 1, 2020 through December 31,
4  2021, produce any and all reports of disability file reviews You have received from any of the
5  following Third Party Review Companies:

6  - MLS or the MLS Group of Companies
7  - ECN or Exam Coordinators Network

8  **Response:** Hartford objects to this Request for Production as the question seeks private,
9  confidential, and highly protected medical reports of individuals who are not a party to this lawsuit,
10  nor are their claims at issue in this lawsuit. Hartford further objects on the grounds that the
11  disclosure sought would constitute a direct violation of HIPAA and other federal privacy laws that
12  protect sensitive and confidential medical information. Hartford further objects to the extent this
13  Request for Production seeks information which is beyond the reasonable scope of discovery in
14  this ERISA case by seeking any and all reports of disability file reviews generated by MLS Group
15  of Companies ("MLS") or Exam Coordinators Network ("ECN") over a two year period of time.
16  Both MLS and ECN operate as independent third party companies that engage with independent
17  doctors to perform a medical peer review. Hartford further objects as this request is overly broad
18  in scope, unduly burdensome, and oppressive. The requested reports pertain to the individualized
19  claims of other claimants which have no relevance to the long term disability claim brought by
20  Plaintiff. The request bears no relevance to whether Hartford abused its discretion in determining
21  that Plaintiff had not met her burden of proving disability and entitlement to benefits beyond
22  February 18, 2021, which is the subject of this lawsuit and thus this request is not proportional to
23  the needs of this case.

24  **Request for Production No. 4:** For the period January 10, 2014 through the present,
25  produce any and all policies and procedures that You changed or instituted in response to the court
26  decisions in *Demer v. I.B.M. Corp. LTD Plan*, 835 F.3d 893 (9th Cir. 2016) or *Hertz v. Hartford*
27  *Life and Accident Ins. Co.*, 991 F.Supp.2d 1121 (D. Nev. 2014).

28

1    **Response:**   Hartford objects to this Request for Production as the question seeks

2    proprietary and trade secret information of Hartford that has no direct impact on how the Plaintiff's

3    claim for LTD benefits was adjudicated. Hartford further objects as this Request for Production

4    seeks policies and procedures put in place following two cases that span nine (9) years' time from

5    January 10, 2014 through December 2022, making this Request for Production overly broad in

6    time and scope and in consideration of the duration of Plaintiff's LTD claim. Hartford further

7    objects to this Request for Production as unduly burdensome, beyond the scope of discovery in

8    this ERISA case and not proportional to the needs of this case. The question in this case is whether

9    Plaintiff met her burden of proving disability and entitlement to benefits beyond February 18,

10   2021, and this Request has no bearing on that issue. To the extent Hartford's legal department

11   provided legal advice that impacted any "policies and procedures" that advice would be privileged.

12   Without waiving the foregoing objection, Hartford states that updates and changes to internal

13   policies and procedures are made on an ongoing basis and based on a number of factors, both

14   externally and internally, to allow Hartford to fairly adjudicate claims at an individual claims level.

15   **Request for Production No. 5:**   For the period January 10, 2014 through the present,

16   produce any and all Documents of Communications that refer or relate in any way to Your

17   maintaining records of disability file reviewer findings on claims to track, document, or show the

18   reviewers' neutrality in practice.

19   **Response:**   Hartford objects to this Request for Production as the question is overly broad

20   in seeking all "Documents" and "Communications" in any form that pertain to maintaining records

21   of disability file reviewer findings in order to track, document, or show the reviewers' neutrality

22   in practice and has no direct impact on how the Plaintiff's claim for LTD benefits was adjudicated.

23   Hartford further objects as this Request for Production seeks records that span nine (9) years' time

24   from January 10, 2014 through December 2022, making this Request for Production overly broad

25   in time and scope and in consideration of the duration of Plaintiff's LTD claim. Hartford further

26   objects to this Request for Production as unduly burdensome, beyond the scope of discovery in

27   this ERISA case and not proportional to the needs of this case. The question in this case is whether

28   Hartford abused its discretion in determining that Plaintiff had not met her burden of proving

OGLETREE, DEAKINS, NASH, SMOAK &amp; WART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700

4

1   disability and entitlement to benefits beyond February 18, 2021, and this Request has no bearing

2   on that issue.

3       **Request for Production No. 6:** For the period January 10, 2014 through the present,

4   produce any and all Documents or Communications between You and any of the following Third

5   Party Review Companies that refer or relate in any way to ensuring the neutrality in practice of

6   the reviewers retained by those Third Party Review Companies:

7           • MLS or the MLS Group of Companies

8           • ECN or Exam Coordinators Network

9       **Response:** Hartford objects to this Request for Production as the question seeks documents

10  between Hartford and two independent Third Party Review Companies, MLS and ECN, and

11  contains proprietary and trade secret information of Hartford that has no direct impact on how the

12  Plaintiff's claim for LTD benefits was adjudicated and does not pertain to whether Hartford abused

13  its discretion in determining that Plaintiff had not met her burden of proving disability and

14  entitlement to benefits beyond February 18, 2021. Hartford further objects as this Request for

15  Production seeks documents that span nine (9) years' time from January 10, 2014 through

16  December 2022 and in consideration of the duration of Plaintiff's LTD claim, making this Request

17  for Production overly broad in time and scope. Hartford further objects to this Request for

18  Production as unduly burdensome, beyond the scope of discovery in this ERISA case and not

19  proportional to the needs of this case. Without waiving the foregoing objection, Hartford ensures

20  neutrality in practice of the reviewers retained by MLS and ECN through proprietary and

21  confidential contract provisions.

22      **Supplemental Response: Hartford supplements its response as follows pursuant to**

23  **entry of January 27, 2023 Stipulated Protective Order (ECF 39): The contract between**

24  **Hartford and the medical vendor companies contains a provision and requires at a minimum**

25  **each report including the medical consultant reviewer attestation of expertise, qualifications,**

26  **independence, and impartiality.** *See also* **MLS and Genex Contracts (HLAICSFRFP000001-**

27  **88)(Confidential Subject to Stipulated Protective Order), produced herewith via ShareFile**

28  **FTP link.**

OGLETREE, DEAKINS, NASH, SMOAK &
WART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

OGLETREE, DEAKINS, NASH, SMOAK &
WART, P.C.
ESPLANADE CENTER III, SUITE 800,
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1    **Request for Production No. 7:** For the period January 10, 2014 through the present,

2    produce any and all Documents or Communications that track, document, or show the following

3    reviewers' neutrality in practice and/or which track, document, or show the rate or percentage of

4    time the following reviewers opined that a long-term disability claimant did or did not have work-

5    related restrictions and limitations:

6    • Lucien Parillo, M.D.

7    • Rajendra Marwah, M.D.

8    • David Hoenig, M.D.

9    **Response:**  Hartford objects to this request for production seeking documents showing

10    Communications and statistics of Dr. Lucien Parillo, Dr. Rajendra Marwah and Dr. David Hoenig,

11    as overly broad in time and scope, seeking over nine (9) years of information not related to whether

12    Hartford abused its discretion in determining that Plaintiff had not met her burden of proving

13    disability and entitlement to benefits beyond February 18, 2021, which is the subject of this lawsuit

14    and this request is not proportional to the needs of this case.  Hartford further objects as this request

15    is unduly burdensome and beyond the scope of discovery in this ERISA case.  Hartford further

16    objects to producing information showing the rate or percentage of time that Dr. Parillo, Dr.

17    Marwah and Dr. Hoenig opined that a long-term disability claimant did or did not have work-

18    related restrictions and limitations as this information is irrelevant to the Plaintiff's claim in this

19    lawsuit, the information sought is not proportional to the needs of this case and unduly

20    burdensome. Notwithstanding said objection, Hartford has in place confidential contracts with

21    independent third party vendors to ensure that reviews are impartial and based on an objective

22    review in the area of specialty based on the medical records. Hartford does not directly refer claims

23    for evaluation to the independent reviewing physicians. Rather, Hartford forwards requests for

24    external reviews to third party vendor companies and those vendors, in turn, independently assign

25    the independent reviewing physicians to ensure neutrality in the review process.

26    **Supplemental Response: Without foregoing the above objections, Hartford**

27    **supplements its response as follows pursuant to entry of January 27, 2023 Stipulated**

28    **Protective Order (ECF 39):  Hartford does not track the percentage of time that peer**

6

1  reviewing physicians opined that a long term disability claimant did or did not have work-

2  related restrictions and limitations.

3  **Request for Production No. 8:** For the period January 1, 2020 through the present,

4  produce any and all claim metrics or claim tracking documents or tools that include or incorporate

5  data or information relating to Plaintiff's claim.

6  **Response:** Hartford objects to this request for production as the information sought on

7  claim metrics and claim tracking documents or tools as it relates to Plaintiff's claim is overly broad

8  and beyond the reasonable scope of discovery in this ERISA case. Hartford further objects as the

9  information sought may be proprietary and confidential and constitute trade internal trade secret

10  documentation. Notwithstanding said objection, Hartford states that the claim documentation that

11  was reviewed for purposes of making a claim decision on Plaintiff's claim is contained in the

12  Administrative Record that has been produced.

13  **Request for Production No. 9:** Produce any and all documents that refer or relate to

14  reserves relating to Plaintiff's long-term disability claim.

15  **Response:** Hartford objects to this request for production seeking information on reserves

16  relating to Plaintiff's long-term disability claim as overly broad, unduly burdensome,

17  disproportionate to the needs of this case, and not reasonably calculated to lead to the discovery of

18  admissible evidence, and thus, outside the scope of permissible discovery. Hartford further objects

19  as this request is unduly burdensome and beyond the scope of discovery in this ERISA case.

20  Hartford further objects to this request for production on the grounds that it seeks information

21  irrelevant to the parties' claims or defenses, not reasonably calculated to lead to the discovery of

22  admissible evidence and not proportional to the needs of the case. Notwithstanding said objection,

23  Hartford states that the employees involved in the claim decision process for the plaintiff's claim

24  for long term disability benefits had no access to reserve information. Reserves and other company

25  financial information are irrelevant to the plaintiff's claim. In evaluating claims under employee

26  benefit plans insured by Hartford, it is Hartford's practice and intention to review such claims

27  fairly, without regard to the manner in which the plan is funded, and to consistently award benefits

28  on claims that are entitled to payment pursuant to the provisions of the applicable benefit plan

OGLETREE, DEAKINS, NASH, SMOAK & WART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 E. EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

7

while consistently denying claims that are not entitled to such payments. Hartford does not provide its Ability Analysts, Managers and Appeals Specialists with any incentives, remuneration, bonuses, awards, achievements, or other recognition based in whole or in part upon the denial or termination of claims. Hartford's claims decision-makers are paid fixed salaries and performance bonuses that are wholly unrelated to the number of claims paid or claims denied. Hartford's claims and appeals decision-makers are evaluated on the quality and accuracy of their claims decisions in accordance with the applicable plan/policy documents. Hartford does not discourage its claims and appeals decision-makers from paying legitimate claims. Hartford's claims and appeals decision-makers are not involved in Hartford's financial decisions, including, but not limited to, any review or analysis of Hartford's financial performance, or the financial performance or claims experience of any particular long term disability plan insured by Hartford. Hartford's claims department and appeals unit are completely separate business units from the financial and underwriting departments. Neither the claims department nor the appeals unit seeks approval from Hartford's financial underwriters in connection with their decision-making on claims for disability benefits. Hartford's financial and underwriting departments do not advise or influence the claims department or appeals unit with respect to the denial or termination of a claimant's benefits. Indeed, these units are kept separate from each other. The office of the Chief Financial Officer of Hartford, and its affiliate, subsidiary or parent companies, do not have any involvement and do not participate in claims decisions on disability benefits at any level.

**Request for Production No. 10:** Produce your complete claims manual.

**Response:** Hartford objects to this Request for Production that broadly seeks the complete claims manual utilized by Hartford as overly broad in scope and time. Hartford further objects to this Request on the grounds that it is unduly burdensome, oppressive, and not reasonably calculated to lead to the discovery of evidence relevant to the claims and defenses of the parties, and not proportional to the needs of the case since it seeks all rules, guidelines, manuals, etc. involving administration and processing of all disability claims regardless of whether or not such documentation has any connection with, or was used in, Plaintiff's claim. Hartford further objects to this Request on the grounds that it seeks confidential, proprietary, and commercially sensitive

8

1   information without a showing of need and prior to entry of an appropriate protective order.

2          Subject to and without waiving the foregoing objections, Hartford states that it maintains

3   a collection of technical reference tools and best practices for the administration of Disability

4   claims (the "Claim Reference Manual"). The Claim Reference Manual is a product of Defendant's

5   200 years of experience and expertise in the insurance industry, and extensive research conducted

6   by several different departments within Hartford over an extended period of time. The Claim

7   Reference Manual expressly states the following: "[n]ot for use with the public or other industry

8   professionals. Not for duplication or distribution outside The Hartford. ©2022 The Hartford.

9   Company confidential, for internal distribution only." Hartford's employees must be granted

10  access to the Claim Reference Manual by the company and such access is password

11  protected. Hartford does not disseminate the Claim Reference Manual to the general public or to

12  its insureds. Moreover, disclosure of the Claim Reference Manual to Hartford's competitors

13  would harm Defendant's competitive advantage in the insurance industry. Hartford further objects

14  to this Request on the ground that the majority of information contained in the Claim Reference

15  Manual is not applicable to the Plaintiff's claim for disability and, therefore, not relevant to this

16  action.

17         Answering further, Hartford states that the Administrative Record includes the relevant

18  portion of the Claim Reference Manual for the relevant time period that was relied upon in

19  adjudicating Plaintiff's claim. Specifically, the Termination of Benefits letter dated February 18,

20  2021 contains the relevant portion of the Claim Reference Manual as cited on Page 4 that was

21  utilized in reviewing Plaintiff's claim for long-term disability benefits. The Termination of

22  Benefits letter is contained in the Administrative Record which has been produced.

23         **Supplemental Response:**   **Without foregoing the above objections, Hartford**

24  **supplements its response as follows:** *See* **Index of Topics for KMT, Claims Excellence**

25  **Standards, and Claims Excellence Reference (HLAICSFRFP000089-104)(Confidential**

26  **Subject to Stipulated Protective Order), produced herewith via ShareFile FTP link pursuant**

27  **to entry of January 27, 2023 Stipulated Protective Order (ECF 39).**

28

OGLETREE, DEAKINS, NASH, SMOAK &
WART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

**INTERROGATORIES**

**Interrogatory No. 1:** For each calendar year for the period January 1, 2020 through December 31, 2021, please state the total amounts You paid for disability file reviews (either directly or through any external review company or other source) from: Lucien Parillo, M.D.; Rajendra Marwah, M.D.; David Hoenig, M.D.

**Response:** Hartford objects to the extent Plaintiff is seeking internal statistics on the total amounts paid for disability file reviews either directly or through an external review company or other source) for Dr. Lucien Parillo, Dr. Rajendra Marwah and Dr. David Hoenig as the information sought constitutes or contains confidential, proprietary, and/or trade secret information. Hartford further objects on the basis that the request seeks information outside the permissible scope of discovery, as set forth in Fed. R. Civ. P. 26(b)(1), because the amount of money paid by Hartford for disability file reviews for the three doctors referenced above has no bearing on the Plaintiff's claim for disability benefits or whether Hartford abused its discretion in determining that Plaintiff had not met her burden of proving disability and entitlement to benefits beyond February 18, 2021. The information sought is neither relevant to the structural conflict nor proportional to the needs of the case, considering the importance of the issues at stake, the importance of discovery in resolving the issues, and whether the burden or expense of discovery outweighs its likely benefits. Notwithstanding the foregoing objection, Hartford further objects to this interrogatory as the amounts paid are not paid to individual physicians but rather to a third party reviewing company and are entirely irrelevant, would fail to provide or lead to any meaningful information, and the burden of attempting to comply with such requests is contrary to ERISA's goal of promptly resolving disputes. Additionally, the request is overbroad and burdensome as not limited to the plaintiff's long term disability claim. Accordingly, Plaintiff's request for discovery here amounts to a fishing expedition.

**Supplemental Response:** Without foregoing the above objections, Hartford supplements its response as follows pursuant to entry of January 27, 2023 Stipulated Protective Order (ECF 39):

    a.   Lucien Parillo, M.D.

OGLETREE, DEAKINS, NASH, SMOAK &amp; STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

|   | 2020 – 163 | $100,961 |
|---|---|---|
|   | 2021 – 87 | $45,744.06 |
| b. | **Rajendra Marwah, M.D.** | |
|   | 2020 – 15 | $14,152.33 |
|   | 2021 – 18 | $13,598.75 |
| c. | **David Hoenig, M.D.** | |
|   | 2020 – 331 | $254,930.38 |
|   | 2021 – 220 | $194,969.53 |
| d. | **Charles Brock, M.D.** | |
|   | 2020 – 63 | $54,610.60 |
|   | 2021 – 68 | $67,303.02 |

**Interrogatory No. 2:** For each calendar year for the period January 1, 2020 through December 31, 2021, please state the total amounts You paid for disability file reviews from each of the following Third Party Review Companies: MLS or MLS Group of Companies; ECN or Exam Coordinators Network.

**Response:** Hartford objects to the extent Plaintiff is seeking internal statistics on the total amounts paid for disability file reviews from Third Party Review Companies, MLS Group of Companies ("MLS") or Exam Coordinators Network ("ECN") as the information sought constitutes or contains confidential, proprietary, and/or trade secret information. Hartford further objects on the basis that the request seeks information outside the permissible scope of discovery, as set forth in Fed. R. Civ. P. 26(b)(1), because the amount of money paid by Hartford for disability file reviews to MLS or ECN has no bearing on the Plaintiff's claim for disability benefits or whether Hartford abused its discretion in determining that Plaintiff had not met her burden of proving disability and entitlement to benefits beyond February 18, 2021, and the information sought is neither relevant to the structural conflict nor proportional to the needs of the case, considering the importance of the issues at stake, the importance of discovery in resolving the issues, and whether the burden or expense of discovery outweighs its likely benefits. Accordingly, Plaintiff's request for discovery here amounts to a fishing expedition.

11

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1    <u>Supplemental Response:</u> Without foregoing the above objections, Hartford

2   supplements its response as follows pursuant to entry of January 27, 2023 Stipulated

3   Protective Order (ECF 39):

4        a.  **MLS Group of Companies**

5            2020 – 3477        $1,564,974

6            2021 – 2358        $886,150

7        b.  **Exam Coordinators Network**

8            2020 – 2403        $2,211,348

9            2021 – 3356        $2,810,670

10   <u>Interrogatory No. 3:</u> Please state the total reserves on Plaintiff's claim. If the reserve

11   amounts changed over time, please state the reserve amount on each and every date the reserve

12   was set, revised, eliminated, or recovered.

13   <u>Response:</u> Hartford objects to this Interrogatory seeking information on reserves relating

14   to Plaintiff's long-term disability claim as overly broad, unduly burdensome, disproportionate to

15   the needs of this case, and not reasonably calculated to lead to the discovery of admissible

16   evidence, and thus, outside the scope of permissible discovery. Hartford further objects as this

17   request is unduly burdensome and beyond the scope of discovery in this ERISA case.  Hartford

18   further objects to this request for production on the grounds that it seeks information irrelevant to

19   the parties' claims or defenses, not reasonably calculated to lead to the discovery of admissible

20   evidence and not proportional to the needs of the case. Notwithstanding said objection, Hartford

21   states that the employees involved in the claim decision process for the plaintiff's claim for long

22   term disability benefits had no access to reserve information. Reserves and other company

23   financial information are irrelevant to Plaintiff's claim. In evaluating claims under employee

24   benefit plans insured by Hartford, it is Hartford's practice and intention to review such claims

25   fairly, without regard to the manner in which the plan is funded, and to consistently award benefits

26   on claims that are entitled to payment pursuant to the provisions of the applicable benefit plan

27   while consistently denying claims that are not entitled to such payments.  Hartford does not provide

28   its Ability Analysts, Managers and Appeals Specialists with any incentives, remuneration,

12

1  bonuses, awards, achievements, or other recognition based in whole or in part upon the denial or

2  termination of claims. Hartford's claims decision-makers are paid fixed salaries and performance

3  bonuses that are wholly unrelated to the number of claims paid or claims denied.  Hartford's claims

4  and appeals decision-makers are evaluated on the quality and accuracy of their claims decisions in

5  accordance with the applicable plan/policy documents.  Hartford does not discourage its claims

6  and appeals decision-makers from paying legitimate claims.  Hartford's claims and appeals

7  decision-makers are not involved in Hartford's financial decisions, including, but not limited to,

8  any review or analysis of Hartford's financial performance, or the financial performance or claims

9  experience of any particular long term disability plan insured by Hartford.  Hartford's claims

10 department and appeals unit are completely separate business units from the financial and

11 underwriting departments.  Neither the claims department nor the appeals unit seeks approval from

12 Hartford's financial underwriters in connection with their decision-making on claims for disability

13 benefits.  Hartford's financial and underwriting departments do not advise or influence the claims

14 department or appeals unit with respect to the denial or termination of a claimant's benefits.

15 Indeed, these units are kept separate from each other. The office of the Chief Financial Officer of

16 Hartford, and its affiliate, subsidiary or parent companies, do not have any involvement and do not

17 participate in claims decisions on disability benefits at any level.

18    **Interrogatory No. 4:** For each calendar year for the period January 1, 2020 through

19 December 31, 2021, please state the total amount of reserves saved, recovered, or eliminated based

20 on reviews by from: Lucien Parillo, M.D.; Rajendra Marwah, M.D.; David Hoenig, M.D.

21    **Response:** Hartford objects to this Interrogatory seeking information on reserves relating

22 to any and all claims administered by Hartford and not specific to Plaintiff's long-term disability

23 claim as overly broad, unduly burdensome, disproportionate to the needs of this case, and not

24 reasonably calculated to lead to the discovery of admissible evidence, and thus, outside the scope

25 of permissible discovery. Hartford further objects as this request is unduly burdensome and beyond

26 the scope of discovery in this ERISA case.  Hartford further objects to this request for production

27 on the grounds that it seeks information irrelevant to the parties' claims or defenses, not reasonably

28 calculated to lead to the discovery of admissible evidence and not proportional to the needs of the

OGLETREE, DEAKINS, NASH, SMOAK &
WART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

case. Notwithstanding said objection, Hartford states that the employees involved in the claim decision process for Plaintiff's claim for long term disability benefits had no access to reserve information. Reserves and other company financial information are irrelevant to the plaintiff's claim. In evaluating claims under employee benefit plans insured by Hartford, it is Hartford's practice and intention to review such claims fairly, without regard to the manner in which the plan is funded, and to consistently award benefits on claims that are entitled to payment pursuant to the provisions of the applicable benefit plan while consistently denying claims that are not entitled to such payments. Hartford does not provide its Ability Analysts, Managers and Appeals Specialists with any incentives, remuneration, bonuses, awards, achievements, or other recognition based in whole or in part upon the denial or termination of claims. Hartford's claims decision-makers are paid fixed salaries and performance bonuses that are wholly unrelated to the number of claims paid or claims denied. Hartford's claims and appeals decision-makers are evaluated on the quality and accuracy of their claims decisions in accordance with the applicable plan/policy documents. Hartford does not discourage its claims and appeals decision-makers from paying legitimate claims. Hartford's claims and appeals decision-makers are not involved in Hartford's financial decisions, including, but not limited to, any review or analysis of Hartford's financial performance, or the financial performance or claims experience of any particular long term disability plan insured by Hartford. Hartford's claims department and appeals unit are completely separate business units from the financial and underwriting departments. Neither the claims department nor the appeals unit seeks approval from Hartford's financial underwriters in connection with their decision-making on claims for disability benefits. Hartford's financial and underwriting departments do not advise or influence the claims department or appeals unit with respect to the denial or termination of a claimant's benefits. Indeed, these units are kept separate from each other. The office of the Chief Financial Officer of Hartford, and its affiliate, subsidiary or parent companies, do not have any involvement and do not participate in claims decisions on disability benefits at any level.

**Interrogatory No. 5:** For each calendar year for the period January 1, 2020 through December 31, 2021, please state the total amount of reserves saved, recovered, or eliminated based

14

1  on disability reviews received from MLS or MLS Group of Companies, and ECN or Exam

2  Coordinators Network.

3      **Response:**  Hartford objects to this Interrogatory seeking information on reserves relating

4  to any and all claims administered by Hartford and not specific to Plaintiff's long-term disability

5  claim as overly broad, unduly burdensome, disproportionate to the needs of this case, and not

6  reasonably calculated to lead to the discovery of admissible evidence, and thus, outside the scope

7  of permissible discovery. Hartford further objects as this request is unduly burdensome and beyond

8  the scope of discovery in this ERISA case. Hartford further objects to this request for production

9  on the grounds that it seeks information irrelevant to the parties' claims or defenses, not reasonably

10  calculated to lead to the discovery of admissible evidence and not proportional to the needs of the

11  case. Notwithstanding said objection, Hartford states that the employees involved in the claim

12  decision process for Plaintiff's claim for long term disability benefits had no access to reserve

13  information. Reserves and other company financial information are irrelevant to the plaintiff's

14  claim. In evaluating claims under employee benefit plans insured by Hartford, it is Hartford's

15  practice and intention to review such claims fairly, without regard to the manner in which the plan

16  is funded, and to consistently award benefits on claims that are entitled to payment pursuant to the

17  provisions of the applicable benefit plan while consistently denying claims that are not entitled to

18  such payments. Hartford does not provide its Ability Analysts, Managers and Appeals Specialists

19  with any incentives, remuneration, bonuses, awards, achievements, or other recognition based in

20  whole or in part upon the denial or termination of claims. Hartford's claims decision-makers are

21  paid fixed salaries and performance bonuses that are wholly unrelated to the number of claims paid

22  or claims denied. Hartford's claims and appeals decision-makers are evaluated on the quality and

23  accuracy of their claims decisions in accordance with the applicable plan/policy documents.

24  Hartford does not discourage its claims and appeals decision-makers from paying legitimate

25  claims. Hartford's claims and appeals decision-makers are not involved in Hartford's financial

26  decisions, including, but not limited to, any review or analysis of Hartford's financial performance,

27  or the financial performance or claims experience of any particular long term disability plan

28  insured by Hartford. Hartford's claims department and appeals unit are completely separate

OGLETREE, DEAKINS, NASH, SMOAK & NART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700

1   business units from the financial and underwriting departments.  Neither the claims department

2   nor the appeals unit seeks approval from Hartford's financial underwriters in connection with their

3   decision-making on claims for disability benefits.   Hartford's financial and underwriting

4   departments do not advise or influence the claims department or appeals unit with respect to the

5   denial or termination of a claimant's benefits. Indeed, these units are kept separate from each other.

6   The office of the Chief Financial Officer of Hartford, and its affiliate, subsidiary or parent

7   companies, do not have any involvement and do not participate in claims decisions on disability

8   benefits at any level.

9   **Interrogatory No. 6:** Please state the name of each and every Document or

10  Communication that tracks claim statistics or metrics. Such statistics or metrics may include, but

11  are not limited to, claim approval or denial numbers or rates, appeal approval or denial numbers

12  or rates, claim termination numbers or rates, claim recovery numbers or rates, liability acceptance

13  rates, expectations or plans for various claim metrics, historical claim statistics, or any other such

14  metrics.

15  **Response:**  Hartford objects to this interrogatory as overly broad, unduly burdensome,

16  disproportionate to the needs of this case, and not reasonably calculated to lead to the discovery of

17  admissible evidence, and thus, outside the scope of permissible discovery. Hartford further objects

18  as this request is unduly burdensome and beyond the scope of discovery in this ERISA case.

19  Hartford further objects to this request for production on the grounds that it seeks information

20  irrelevant to the parties' claims or defenses, not reasonably calculated to lead to the discovery of

21  admissible evidence and not proportional to the needs of the case. Hartford objects to this request

22  as overly broad, unduly burdensome, disproportionate to the needs of this case under the

23  proportionality calculation set forth in the Federal Rule of Civil Procedure 26(b)(1), and not

24  reasonably calculated to lead to the discovery of admissible evidence, and thus, outside the scope

25  of permissible discovery under the Federal Rules of Civil Procedure because it seeks information

26  about Hartford's administration of claims other than Plaintiff's that has no bearing on the ultimate

27  issue in this case, which is whether Hartford abused its discretion in determining that Plaintiff had

28  not  met her burden of proving disability and entitlement to benefits beyond February 18, 2021,.

16

OGLETREE, DEAKINS, NASH, SMOAK &
WART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700

1   Whether a claimant meets the subject plan's definition of disability is a fact-intensive
2   determination that is based upon all the evidence in the administrative record and the implicated
3   provisions of the applicable plan documents. Each claim is analyzed individually and without
4   consideration of other claims. Specifically, the Hartford claims person reviewing each claim
5   considers independent reviewing physicians' opinions in conjunction with the governing policy's
6   terms and conditions, as well as many other considerations in a claims file, in reaching his or her
7   decision as to whether the claimant meets the governing policy's definition of disability. No two
8   claims are identical, and in making a disability determination, a Hartford claims person considers
9   all factual, medical, and vocational evidence submitted by a claimant or obtained by Hartford for
10  a particular claim. Hartford objects to this request as overly broad, unduly burdensome,
11  disproportionate to the needs of this case under the proportionality calculation set forth in the
12  Federal Rule of Civil Procedure 26(b)(1), and not reasonably calculated to lead to the discovery of
13  admissible evidence, and thus, outside the scope of permissible discovery under the Federal Rules
14  of Civil Procedure because it seeks information about non-ERISA governed claims. Plaintiff's
15  claims is governed by ERISA and like other claims governed by ERISA, was administered in
16  accordance with the well-established rules of administration of ERISA-governed claims.
17  Accordingly, non-ERISA claims that were not administered in accordance with the well-
18  established rules of administration of ERISA-governed claims that have no bearing on the ultimate
19  issue in this case, which is whether Hartford abused its discretion in terminating Plaintiff's claim.
20        Hartford objects to this request as vague, ambiguous, and unduly burdensome because it is
21  unable to determine what meaning(s) Plaintiff has assigned to the undefined, and thereby, unclear
22  terms "liability acceptance rates," "expectations," "plans," "claims." and "any other such metrics".
23        Hartford objects to this request as disproportionate to the needs of this case, and,
24  consequently, outside the scope of permissible discovery under the proportionality calculation set
25  forth in the Federal Rules of Civil Procedure. The marginal, if any, probative value of the requested
26  information is outweighed by the potential burden and costs of providing the requested
27  information. Courts recognize that determining whether other claims are "comparable" to the
28  subject claim "could create a morass of secondary and remote arguments" and that "[t]he utility of

17

1  such expansive discovery is likely in all but the most unusual cases to be outweighed by the

2  burdensomeness and costs involved." Murphy v. Deloitte & Touche Group Ins. Plan, 619 F.3d

3  1151, 1164, n. 9 (10th Cir. 2010).

4      Approval and denial rates, on their own, do not prove that Hartford was arbitrarily

5  approving and denying claims, or Plaintiff's specific long-term disability claim. Claims may have

6  been approved, paid for years, and then terminated because the claimant no longer met the subject

7  policy's definition of disability. Additionally, claims may be denied or terminated for a number of

8  reasons, including: (1) the claimant became disabled before he or she was covered under the plan,

9  (2) the claimant died before the benefit effective date, (3) the claimant returned to work during the

10  elimination period, (4) the claimant never provided the requested information such that Hartford

11  was unable to make a claim decision, (5) the claimant died after the claim was approved and while

12  benefits were being paid, (6) the claimant returned to work after the claim was approved and while

13  benefits were being paid, (7) the claimant refused to submit to an independent medical examination

14  as required under the plan, (8) the claimant was not under the regular care of a physician as required

15  by policy language. In sum, approval, denial, and termination rates, without context, are

16  meaningless.

17      Discovery regarding approval and denial rates would necessarily require discovery of the

18  underlying facts of each decision to determine if it is comparable to the termination of Plaintiff's

19  claim, and thereby, relevant to this case. To do this would require Hartford to manually review the

20  file for every claims administered by Hartford. Claim files contain hundreds and sometimes

21  thousands of pages of material. The burden and expense of this work would far exceed any

22  probative value of such discovery or be disproportionate to the amount in controversy. Such a task

23  would also significantly impact Hartford's business as it would have to use its employees to

24  complete the task, all of whom would have to suspend or add to their regular job responsibilities.

25      Notwithstanding said objections, Hartford states that the documentation related to

26  Plaintiff's claim for disability benefits is contained in the Administrative Record which has been

27  produced.

28      **Interrogatory No. 7:** With respect to each Document identified in response to Non-

18

1  Uniform Interrogatory No. 6, above, please identify which classes of employees each Document

2  is provided or made available to [for example, if a Document exists titled "Weekly Tracking

3  Report" and that Document is provided to Managers and Assistant Vice Presidents, You are being

4  asked identify the document ("Weekly Tracking Report") and state to whom it is provided or made

5  available ("provided to Managers and Assistant Vice Presidents")].

6       **Response:** Hartford hereby incorporates by reference as if fully set forth herein the

7  Response to Non-Uniform Interrogatory No. 6 above. Hartford further objects as identifying

8  classes of employees associated with Documents that are available is overly broad, unduly

9  burdensome, disproportionate to the needs of this case, and not reasonably calculated to lead to

10  the discovery of admissible evidence, and thus, outside the scope of permissible discovery.

11       Notwithstanding said objection, Hartford states that the documentation related to Plaintiff's

12  claim for disability benefits is contained in the Administrative Record which has been produced.

13       DATED this 14th day of February 2023.

14                                OGLETREE, DEAKINS, NASH, SMOAK &
                                   STEWART, P.C.
15

16                                By:    s/ Kristina N. Holmstrom
                                         Kristina N. Holmstrom
17                                       Esplanade Center III, Suite 800
                                         2415 East Camelback Road
18                                       Phoenix, AZ  85016

19                                       *Attorneys for Defendant Hartford Life and*
20                                       *Accident Insurance Company*

21

22

23

24

25

26

27

28

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone: 602-778-3700

**CERTIFICATE OF SERVICE**

I certify that on the 14th day of February 2023, I electronically transmitted the foregoing document to:

Patrick W. Mause
Law Office of Patrick Mause, PLLC
1830 East Broadway, Suite 124-302
Tucson, AZ 85719
patrick@pmauselaw.com

*Attorneys for Plaintiff Sabrina Franklin*

s/ Robin  McAdams

55014693.v1-OGLETREE

OGLETREE, DEAKINS, NASH, SMOAK 8 WART, P.C.
ESPLANADE CENTER III, SUITE 800
2415 EAST CAMELBACK ROAD
PHOENIX, AZ 85016
TELEPHONE: 602-778-3700